805 So.2d 1134 (2002)
SUCCESSION OF Virginia FANNALY, Mark Ainsworth, and Brett Ainsworth
v.
LAFAYETTE INSURANCE COMPANY, Doyle Brown, and All-state Insurance Company.
Nos. 2001-C-1144, 2001-C-1343, 2001-C-1355, 2001-C-1360.
Supreme Court of Louisiana.
January 15, 2002.
Rehearing Denied February 22, 2002.
*1135 Ronald S. Macaluso, Macaluso & Jordan, Hammond, Counsel for Applicant in No. 2001-C-1144.
Terry A. Bell, Metairie, Robert C. Funderburk, Jr., Funderburk & Andrews, Baton Rouge, Carey J. Guglielmo, Baton Rouge, Gregory A. Dupuy, Metairie, Gordon J. McKernan, Joseph J. McKernan, Baton Rouge, Fred R. DeFrancesch, La Place, John H. Smith, Baton Rouge, Counsel for Respondent in No. 2001-C-1144.
Robert C. Funderburk, Jr., Funderburk & Andrews, Baton Rouge, Counsel for Applicant in No. 2001-C-1343.
Terry A. Bell, Metairie, Ronald S. Macaluso, Macaluso & Jordan, Hammond; Carey J. Guglielmo, Baton Rouge, Gregory A. Dupuy, Metairie, Gordon J. McKernan, Joseph J. McKernan, Baton Rouge, Fred R. DeFrancesch, La Place, John H. Smith, Baton Rouge, Counsel for Respondent in No. 2001-C-1343.
*1136 Gordon J. McKernan, Joseph J. McKernan, John H. Smith, Baton Rouge, Counsel for Applicant in No. 2001-C-1355.
Robert C. Funderburk, Jr., Funderburk & Andrews, Baton Rouge; Terry A. Bell, Metairie, Ronald S. Macaluso, Macaluso & Jordan, Hammond; Carey J. Guglielmo, Baton Rouge, Gregory A. Dupuy, Metairie, Fred R. DeFrancesch, La Place, Counsel for Respondent in No. 2001-C-1355.
Terry A. Bell, Metairie, Counsel for Applicant in No. 2001-C-1360.
Gordon J. McKernan, Joseph J. McKernan, John H. Smith, Robert C. Funderburk, Jr., Funderburk & Andrews, Baton Rouge; Ronald S. Macaluso, Macaluso & Jordan, Hammond; Carey J. Guglielmo, Baton Rouge, Gregory A. Dupuy, Metairie, Fred R. DeFrancesch, La Place, Counsel for Respondent in No. 2001-C-1360.
KNOLL, Justice.[*]
These consolidated writs concern insurance coverage for alleged damages sustained in an automobile accident. The issue is whether a special purpose insurance policy issued by Lafayette Insurance Company (Lafayette) to Pat Tucker d/b/a Century 21 Pat Tucker Realty (Tucker) provided liability coverage for one of Tucker's real estate sales agents, Doyle Brown, and uninsured/underinsured motorists (UM) coverage for passengers in the Brown automobile, who also were real estate sales agents for Tucker. Finding the Lafayette policy neither provided liability coverage for Mr. Brown nor UM coverage for the passengers in the Brown automobile, we affirm.

FACTS AND PROCEDURAL HISTORY
On July 23, 1996, while traveling along Louisiana Highway 40 in Tangipahoa Parish, a 1994 Lincoln owned and operated by Mr. Brown was struck by a 1994 Ford truck with trailer owned and operated by Louis Genovese, Jr. Passengers in the Brown automobile included Virginia Fannaly, Ruby Thibodeaux, and Mary Mosley. Both Ms. Fannaly and Ms. Thibodeaux died shortly after the collision; Ms. Mosley was injured as a result of the collision.
Mr. Brown and his three passengers were real estate sales agents for Tucker with independent contractor agreements. On the morning of the accident, the four attended a sales meeting at Tucker's office and then toured homes for sale. They were en route to a house listed by another broker when the accident happened. Apparently, the accident occurred when Mr. Brown attempted to make a left turn into a private driveway.
Following the accident, plaintiffs, Succession of Virginia Fannaly, Mark Ainsworth, and Brett Ainsworth, filed this suit for declaratory judgment, naming as defendants Lafayette, Mr. Brown, and Allstate Insurance Company (Allstate).[1] Plaintiffs sought a determination of whether the Lafayette policy issued to Tucker provided liability coverage for Mr. Brown and UM coverage for the passengers in the Brown automobile. Subsequently, Judy Beard and W.J. Holland, heirs of decedent Ms. Thibodeaux, intervened.
The district court found the Lafayette policy was ambiguous and, therefore, held the policy provided liability coverage for Mr. Brown and UM coverage for the passengers in the Brown automobile.[2] Lafayette *1137 appealed the judgment to the First Circuit; none of the other parties appealed or answered the appeal. In an unpublished opinion, a split, five-judge panel of the First Circuit reversed in part and held that the Lafayette policy neither provided liability coverage for Mr. Brown nor UM coverage for the passengers in the Brown automobile.[3] We granted writs to further consider the correctness vel non of the court of appeal's holding.[4]

DISCUSSION
The single issue before this court is whether the Lafayette policy provided liability coverage for Mr. Brown and UM coverage for the passengers in the Brown automobile.[5] Before addressing this issue, we note the well-established, general rules of contract interpretation.
An insurance policy is an aleatory, nominate contract subject to the general rules of contract interpretation as set forth in our civil code. See LSA-C.C. arts.1912, 1914-15. The extent of coverage under an insurance contract is dependent on the common intent of the insured and insurer. See Ledbetter v. Concord General Corp., 95-0809 (La.01/06/96), 665 So.2d 1166, 1169. Thus, when interpreting an insurance contract, courts must attempt to discern the common intent of the insured and insurer. See LSA-C.C. art. 2045.
In ascertaining the common intent of the insured and insurer, courts begin their analysis with a review of the words in the insurance contract. Words in an insurance contract must be ascribed their generally prevailing meaning, unless the words have acquired a technical meaning, in which case the words must be ascribed their technical meaning. See LSA-C.C. art.2047. Moreover, an insurance contract is construed as a whole and each provision in the contract must be interpreted in light of the other provisions. One provision of the contract should not be construed separately at the expense of disregarding other provisions. See LSA-C.C. art.2050; Peterson v. Schimek, 98-1712 (La.03/02/99), 729 So.2d 1024, 1029.
When the words of an insurance contract are clear and explicit and lead to no absurd consequences, courts must enforce the contract as written. See LSA-C.C. *1138 art.2046. Courts lack authority to alter the terms of an insurance contract under the guise of contractual interpretation when the contract's provisions are couched in unambiguous terms. See Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 93-0911 (La.01/14/94), 630 So.2d 759, 764. Indeed, the rules of contractual interpretation "do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists." See Peterson, 729 So.2d at 1029.
However, if an ambiguity remains after applying the general rules of contractual interpretation to an insurance contract, the ambiguous contractual provision is construed against the insurer who furnished the contract's text and in favor of the insured. See LSA-C.C. art.2056. With these general rules of contract interpretation in mind, we now turn to review the Lafayette policy at issue.
The Lafayette policy, entitled "Premises Commercial Uni-Saver Policy," is a special purpose policy issued to Pat Tucker d/b/a Century 21 Pat Tucker Realty. It provides limited automobile liability coverage for hired autos and non-owned autos by an endorsement entitled "Louisiana Hired Auto and Non-Owned Auto Liability." Plaintiffs and intervenors urge that liability coverage is provided under the "Non-Owned Auto Liability" provision of the endorsement.
Section B of the endorsement extends non-owned auto liability coverage "to `bodily injury' or `property damage' arising out of the use of a `non-owned auto' by any person other than [Tucker] in the course of [Tucker's] business." For purposes of non-owned auto liability coverage, Section D of the endorsement provides:
Each of the following is an insured under this insurance to the extent set forth below:
1. [Tucker].
. . . .
3. With respect to a "non-owned auto", any partner or "executive officer" of yours, but only while such "non-owned auto" is being used in your business.
. . . .
None of the following is an insured:
. . . .
4. The owner ... of a "non-owned auto" or any agent or "employee" of any such owner....
Section F of the endorsement defines "non-owned auto" as follows:
3. "Non-owned auto" means any "auto" [Tucker does] not own, lease, hire, rent or borrow which is used in connection with [Tucker's] business. This includes "autos" owned by [Tucker's] "employees",... partners or ... "executive officers",... but only while used in [Tucker's] business....

Liability Coverage under the Lafayette Policy
Plaintiffs and intervenors claim the Lafayette policy "is confusingly ambiguous and is reasonably interpreted in multiple ways." Specifically, they argue the policy is confusing and ambiguous because Section B of the endorsement provided liability coverage for bodily injury arising out of the use of a non-owned auto by any person, other than Tucker, in furtherance of Tucker's business, but the succeeding sections of the endorsement take away coverage. Plaintiffs and intervenors state: "Section D conflicts with Section B because Section B covers any person using a `non-owned auto' in the policyholder's business and then Section D takes that coverage away."
*1139 We disagree with plaintiffs and intervenors, and find that the Lafayette policy is clear and unambiguous. Plaintiffs and intervenors focus merely on the insuring agreement, which broadly provides non-owned auto liability coverage for "`bodily injury' or `property damage' arising out of the use of a `non-owned auto' by any person other than [Tucker] in the course of [Tucker's] business." However, such a narrow focus is improper. In keeping with the well-established jurisprudence recited above, an insurance policy is construed as a whole and each provision in the policy must be interpreted in light of the other provisions. One provision of the policy should not be construed separately at the expense of disregarding other provisions. See LSA-C.C. art.2050; Peterson, 729 So.2d at 1029. Thus, in determining whether an insurance policy provides coverage, every provision of the policy must be read and interpreted, particularly the provisions relating to what is insured, usually contained in a section entitled "Insuring Agreement," the provisions relating to who is insured, usually contained in a section entitled "Who Is An Insured," and the provisions relating to what is excluded from coverage, usually contained in a section entitled "Exclusions." Only then can a determination of coverage be made. See Magnon v. Collins, 98-2822 (La.07/07/99), 739 So.2d 191.
In this case, the Lafayette policy does not provide liability coverage for Mr. Brown because he is not an insured under the provisions of the policy relating to who is insured for non-owned auto liability. For Mr. Brown to be an insured under the provisions of the policy for non-owned auto liability, he would need to be a partner or executive officer of Tucker operating the non-owned auto in furtherance of Tucker's business. The district court found, and plaintiffs and intervenors concede, that the occupants of the Brown automobile, including Mr. Brown, were independent contractors for Tucker. Because Mr. Brown is neither a partner nor executive officer of Tucker, he simply is not an insured for purposes of non-owned auto liability.
Moreover, even if Mr. Brown was a partner or executive officer of Tucker, he would still not be an insured under the provisions of the policy for non-owned auto liability because he owned the automobile he was operating. The Lafayette policy clearly provides "[t]he owner ... of a `nonowned auto'" is not an insured. We recently upheld this type of exclusion in Magnon, supra, wherein an employee was operating his own automobile while in the course and scope of his employment when he was rear-ended by an underinsured motorist. There the employee sought UM coverage under his employer's commercial general liability policy with Vigilant Insurance Company which contained an endorsement entitled "Non-Owned and Hired Auto Liability Insurance." The parties agreed the employee's automobile was a covered auto pursuant to the policy. Nevertheless, because the employee was not an insured under the liability provisions of the policy, we concluded the employee was not entitled to UM coverage. The policy defined insured to include "anyone else while using, with your permission, a covered auto," but excepted from coverage any employee of the named insured "if the covered auto is owned by that employee or a member of his or her household." We explained the apparent purpose of the exception is to provide the named insured protection for liability arising out of the use of non-owned autos, but to preclude coverage for the owner who should have purchased liability coverage for his own automobile. Id. at 198 (citing 15 Louisiana Civil Law Treatise, Insurance Law and Practice, William Shelby McKenzie & H. Alston Johnson, III, § 58, at 164 (2nd *1140 Ed.1996)). We concluded the employee "never achieved insured status for auto liability coverage under the Vigilant policy, and thus is not entitled to UM coverage." Id. at 199.
In this case, Mr. Brown was operating his own automobile at the time of the accident. Mr. Brown's automobile is a covered non-owned auto pursuant to the Lafayette policy because it was not owned, leased, hired, rented, or borrowed by Tucker, and it was used in connection with Tucker's business at the time of the accident. However, even though Mr. Brown's automobile is a covered non-owned auto pursuant to the Lafayette policy, because Mr. Brown was operating the automobile at the time of the accident, Mr. Brown is not an insured under the provisions of the policy for non-owned auto liability. Consequently, as in Magnon, supra, the Lafayette policy does not provide liability coverage for Mr. Brown.

UM Coverage under the Lafayette Policy
Plaintiffs and intervenors also claim the Lafayette policy provided UM coverage for the passengers in the Brown automobile, namely, Ms. Fannaly, Ms. Thibodeaux, and Ms. Mosley. Plaintiffs and intervenors again focus merely on the insuring agreement, arguing the Lafayette policy provided UM coverage for the passengers in the Brown automobile because "they suffered `bodily injury' arising out of the use of a `non-owned auto' driven by a person other than the policyholder in the course of the policyholder's business."
Under Louisiana's UM statute, LSA-R.S. 22:1406, automobile liability insurance which is delivered or issued for delivery in Louisiana and covers liability arising out of ownership, maintenance, or use of a motor vehicle registered in Louisiana and designed for use on public highways must provide UM coverage equal to the liability limits provided for bodily injury, unless UM coverage is validly rejected or lower UM limits are selected. Id. at 195; Jones v. Henry, 542 So.2d 507, 508 (La.1989). Thus, because the Lafayette policy neither contained a waiver of UM coverage nor selection of lower UM limits, the policy provided UM coverage equal to the liability limits provided for bodily injury. However, this consequence is of no avail to plaintiffs and intervenors because the passengers in the Brown automobile do not qualify as insureds under the provisions of the Lafayette policy for non-owned auto liability.
"[I]t is well-settled that a person who does not qualify as a liability insured under a policy of insurance is not entitled to UM coverage under the policy." See Magnon, 739 So.2d at 196 (collecting cases). "In other words, a plaintiff must be an `insured' under auto liability coverage to be entitled to UM coverage." Id. at 196.
For the passengers in the Brown automobile to be insureds under the provisions of the policy for non-owned auto liability, the passengers would need to be partners or executive officers of Tucker. As noted above, the district court found, and plaintiffs and intervenors concede, the occupants of the Brown automobile, including passengers Ms. Fannaly, Ms. Thibodeaux, and Ms. Mosley, were independent contractors for Tucker. Thus, like Mr. Brown, the passengers in the Brown automobile are also not insureds under the provisions of the policy for non-owned auto liability. Consequently, the Lafayette policy does not provide UM coverage for the passengers in the Brown automobile.

DECREE
In conclusion, we find the Lafayette policy neither provided liability coverage for *1141 Mr. Brown nor UM coverage for the passengers in the Brown automobile. Accordingly, the judgment of the court of appeal is affirmed.
AFFIRMED.
NOTES
[*] Retired Judge Robert L. Lobrano, assigned as Justice Pro Tempore, participating in the decision.
[1] Both Mr. Brown and Mr. Genovese had automobile liability insurance on their respective vehicles with Allstate.
[2] In its reasons for judgment, the district court determined: (1) Mr. Brown is an insured under the Lafayette policy because the Brown automobile is a covered non-owned auto; (2) because the Lafayette policy neither contains a waiver of UM coverage nor selection of lower UM limits, there is UM coverage in the same amount as the bodily injury limits; (3) the passengers in the Brown automobile are not insureds under the non-owned auto liability provisions of the Lafayette policy; (4) the passengers in the Brown automobile benefit from UM coverage because they were passengers in a covered non-owned auto; and (5) there is no medical payments coverage available to the passengers in the Brown automobile because of an exclusion in the medical payments section of the Lafayette policy.
[3] Fannaly v. Lafayette Ins. Co., 99-2341. Judge Kline concurred with reasons; Judge Carter concurred in part and dissented in part with reasons; Judge Whipple concurred in part and dissented in part for reasons assigned by Judge Carter.
[4] Fannaly v. Lafayette Ins. Co., 01-1355 (La.09/21/01), 797 So.2d 57.
[5] In his brief to this court, intervenor W.J. Holland claims the district court erred in finding no medical payments coverage under the Lafayette policy for the passengers in the Brown automobile. However, because neither plaintiffs nor intervenors appealed or answered Lafayette's appeal, the district court's judgment regarding medical payments coverage is now final. Thus, intervenor's argument relating to medical payments coverage is not addressed herein.