939 So.2d 563 (2006)
In re ST. LOUIS ENCEPHALITIS OUTBREAK IN OUACHITA PARISH NO. 01-4224 ALL CASES.
Nos. 41,250-CA, 41,251-CA, 41,252-CA, 41,253-CA, 41,254-CA, 41,255-CA, 41,256-CA, 41,257-CA, 41,258-CA, 41,259-CA.
Court of Appeal of Louisiana, Second Circuit.
September 1, 2006.
Rehearing Denied September 21, 2006.
Davenport, Files & Kelly, by M. Shane Craighead, Monroe, for Defendants-Appellants, Specialty National Ins. Co. and/or Specialty Surplus Ins. Co.
Crawford & Anzelmo, by Brian Crawford, Jeffrey Joyce, Monroe, Gainsburgh, *565 Benjamin, David, Meunier & Warshauer, by Gerald E. Meunier, New Orleans, for Plaintiffs-Appellees.
Daigle Fisse, PLC, by Howard Daigle, Jr., Mark E. Seamster, Covington, Nelson, Zentner, Sartor & Snellings, by George M. Snellings, IV, F. Williams Sartor, Jr., Monroe, for Defendants-Appellees.
Before BROWN, STEWART, and GASKINS, JJ.
BROWN, Chief Judge.
Defendants, Specialty Surplus Insurance Company and Specialty National Insurance Company, have appealed the trial court's judgment denying their motions for summary judgment. These insurers claim that their policies did not provide coverage and defense obligations under the allegations of these consolidated lawsuits. Finding no error, we affirm.

Facts and Procedural History
Beginning on September 16, 1996, the Ouachita Parish Police Jury ("Police Jury") contracted with Mosquito Control, Inc. ("MCI") for mosquito control and/or abatement services. This contract was extended through the summer of 2001.
MCI employed Southwestern Assurance Corporation ("SAC") as a broker to obtain insurance coverage for its mosquito abatement project. In 1998 a woman died, possibly of encephalitis, in Jefferson Parish and MCI became concerned as to whether its insurance policy covered such a claim. At that time, MCI communicated its concerns to SAC.
SAC obtained comprehensive general liability insurance coverage for MCI's mosquito abatement project. Specialty Surplus provided commercial general liability coverage to MCI from July 1, 2000, through July 1, 2001. Specialty National provided commercial general liability insurance to MCI from July 1, 2001, through July 1, 2002. MCI paid approximately $28,000 a year in premiums. Specialty Surplus and Specialty National ("the Insurers") used similar policies.
An encephalitis outbreak occurred in the Monroe area during the summer of 2001, and a number of lawsuits were later brought naming the Police Jury, MCI, and MCI's Insurers as defendants.[1] The Insurers denied coverage based upon a breach of contract exclusion in the respective policies, arguing that MCI did not purchase professional liability coverage.
The trial court consolidated nine civil actions and ordered that the insurance coverage issues proceed on a separate track. After discovery, the parties filed cross-motions for summary judgment seeking a ruling on the insurance coverage dispute.
The trial court denied the Insurers' motions for summary judgment and partially granted the cross-motion for summary judgment filed by plaintiffs and MCI. The trial court designated the judgment as final and appealable under La. C.C.P. art. 1915. Both insurers timely appealed.[2]

Discussion
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Costello v. Hardy, 03-1146 *566 (La.01/21/04), 864 So.2d 129. A court must grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
An insurance policy is a contract between the parties and should be construed by using the general rules of contract interpretation set forth in the Louisiana Civil Code. Mayo v. State Farm Mutual Automobile Insurance Company, 03-1801 (La.02/25/04), 869 So.2d 96. The extent of coverage under an insurance contract is dependent on the common intent of the insured and insurer. Succession of Fannaly v. Lafayette Ins. Co., 01-1144 (La.01/15/02), 805 So.2d 1134. In ascertaining the common intent of the insured and insurer, courts begin their analysis with a review of the words in the insurance contract. Id. at 1137.
Words in an insurance contract must be ascribed their generally prevailing meaning, unless the words have acquired a technical meaning, in which case the words must be ascribed their technical meaning. La. C.C. art. 2047. Moreover, an insurance contract is construed as a whole and each provision in the contract must be interpreted in light of the other provisions. One provision of the contract should not be construed separately at the expense of disregarding other provisions. Peterson v. Schimek, 98-1712 (La.03/02/99), 729 So.2d 1024. When the words of an insurance contract are clear and explicit and lead to no absurd consequences, courts must enforce the contract as written. Succession of Fannaly, supra.
Breach of Contract Exclusion
The policies issued in this case provided:
This coverage part does not apply to:
. . . [L]iability for damages arising out of failure to perform or breach of a contractual obligation.
The Insurers claim that any duty owed by MCI to plaintiffs necessarily has its origin in contract. They assert that absent the contract with the Police Jury, MCI would owe no specific duty to plaintiffs and that any liability for damages necessarily arises out of its failure to perform under that contract. They particularly reference plaintiffs' allegations that plaintiffs "are the Third Party Beneficiaries of the contract entered into between MCI and Ouachita Parish Police Jury . . ." The Insurers' argument is that general liability insurance provides coverage for accidents occurring during the course of normal operations and does not guarantee performance of contractual obligations.
The Insurers' argument was rejected by the trial court. We agree with the trial court's conclusion. The allegations of the petitions specifically averred that MCI was negligent in a number of ways. In particular, that MCI failed to use the appropriate chemicals and/or concentrations of the same; failed to use appropriate equipment to trap and destroy the mosquitoes that carried and/or transmitted the Encephalitis virus; and failed to adequately monitor and insure the effectiveness of their work.
Several plaintiffs did assert that they were beneficiaries of the contract between MCI and the Police Jury; however, this does not change the character of the allegations of negligence. It is well settled that the same acts or omissions may constitute breaches of both general duties and contractual duties and may give rise to both actions in tort and actions in contract. *567 A plaintiff may assert both actions and is not required to plead the theory of his case. Dubin v. Dubin, 641 So.2d 1036 (La.App. 2d Cir.1994). When a person negligently performs a contractual obligation, he has committed an active breach of contract which may also support an action in tort. Dubin, supra.
As correctly noted by the trial court, plaintiffs have pled causes of action in both tort and contract. Plaintiffs have alleged a breach of duty owed to all persons which supports an action in tort. The trial court correctly found that under the allegations, the breach of contract exclusion is inapplicable.[3]
Professional Liability
The Common Policy Declarations did not list professional liability under coverage parts for which a premium is indicated, and on the Schedule of Coverages and Limits of Insurance, the box providing for professional liability is not checked. However, under Mosquito Abatement Endorsement "coverage is extended to include professional liability caused by an error or omission committed prior to the policy period and after the Retroactive Date shown on the Declaration . . ."
The trial court found that "ambiguities exist within the terms and provisions of the policy as to whether or not such coverage is extended to the named insured . . ." and that the attachments or endorsements created ambiguities as to professional liability coverage.
On this record, it is clear that MCI sought coverage for any liability flowing from its mosquito abatement project. In particular, MCI wanted coverage for persons claiming that they contracted encephalitis because of the inadequacy of MCI's performance. The Insurers understood what MCI was seeking, as well as its purpose to prevent encephalitis, and based their premium on that information.
The trial court found that the endorsement concerning professional liability rendered the policy ambiguous and subject to reformation in favor of coverage. We agree. In Louisiana Insurance Guaranty Association v. Interstate Fire & Casualty Co., 630 So.2d 759, 764 (La.1994), the supreme court stated:
If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the drafter, or, as originating in the insurance context, in favor of the insured. This rule of strict construction requires that ambiguous policy provisions be construed against the insurer who issued the policy and in favor of coverage to the insured. Smith v. Matthews, 611 So.2d 1377, 1379 (La.1993) (citing Breland, supra). Under this rule, "[e]quivocal provisions seeking to narrow the insurer's obligation are strictly construed against the insurer, since these are prepared by the insurer and the insured had no voice in the preparation." Garcia v. St. Bernard Parish School Board, 576 So.2d 975, 976 (La.1991). LSA-C.C. Art. 2056 codifies this rule of strict construction, providing that "[i]n case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text. A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party." LSA-C.C. Art. 2056; Civil Law Treatise, supra § 4; see also W. Freedman, 2 Richards on the Law of Insurance § 11:2[f] (6th *568 Ed.1990) ("Richards") (noting that the rule of strict construction is also labeled the doctrine of contra proferentum).
"Ambiguity will also be resolved by ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered." Breland v. Schilling, 550 So.2d 609, 610-11 (La.1989). The court should construe the policy "to fulfill the reasonable expectations of the parties in the light of the customs and usages of the industry." Trinity Industries, 916 F.2d at 269 (5th Cir.1990) (citing Benton, 379 So.2d at 231 and LSA-C.C. Arts. 2045, 2050, 2053 and 2054). In insurance parlance, this is labeled the reasonable expectations doctrine. Richards, supra at § 11:2[g].FN9
FN9. The reasonable expectations doctrine can be capsulized as follows: "courts will protect the [insured's] reasonable expectations iii regarding the coverage afforded by insurance contracts even though a careful examination of the policy provisions indicates that such expectations are contrary to the expressed intention of the insurer." R. Keeton and A. Widiss, Insurance Law § 6.13 (1988).
In this case, MCI's reasonable expectations were clearly expressed and understood by the insurers and the contradiction contained in the endorsement titled Mosquito Abatement Endorsement created at least an ambiguity which must be interpreted as providing coverage.

Conclusion
For the reasons set forth above, the trial court's judgment denying Specialty Surplus Insurance Company and Specialty National Insurance Company's motions for summary judgment is affirmed at their cost. This matter is remanded for further proceedings.
Affirmed and Remanded.
APPLICATION FOR REHEARING
Before BROWN, STEWART, GASKINS, PEATROSS and LOLLEY, JJ.
Rehearing denied.
NOTES
[1] Plaintiffs and MCI also sued SAC, alleging that if the policies did not provide coverage, then the broker negligently failed to procure the coverage MCI desired. Those claims have apparently been placed in abeyance pending resolution of the issues before this court.
[2] The trial court noted that the ruling was only partial, as it dealt solely with the breach of contract exclusion and whether professional liability coverage was purchased.
[3] The trial court cogently observed that to grant the insurers motion for summary judgment, "the court would have to construe the insurance policy in question in such a manner that it is unclear to the court what, if anything, would be covered by this policy."