# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT


# 13-224


**SHANE EADS, ET. AL.**

**VERSUS**

**CHARTIS SPECIALTY INS. CO., ET. AL.**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 11-870
HONORABLE DONALD WAYNE HEBERT, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**ELIZABETH A. PICKETT**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***


Court composed of Ulysses Gene Thibodeaux, Chief Judge, Elizabeth A. Pickett, Shannon J. Gremillion, Judges.


**THIBODEAUX, Chief Judge, dissents and assigns written reasons.**


                                                              **AFFIRMED.**



**Patrick C. Morrow**
**James P. Ryan**
**Morrow, Morrow, Ryan & Bassett**
**P. O. Drawer 1787**
**Opelousas, LA 70571-1787**
**Telephone: (337) 948-4483**
**COUNSEL FOR:**
    **Plaintiffs/Appellants - Shane Eads, et al.**

**Edward O. Taulbee, IV**
**Taulbee & Associates**
**P. O. Box 2038**
**Lafayette, LA 70502-2038**
**Telephone: (337) 269-5005**
**COUNSEL FOR:**
　　**Defendants/Appellees - Ricky Boyle and Louisiana Farm Bureau Mutual Insurance Company**

**Mary McCrory Hamilton**
**Julie Anne Scheib**
**Voorhies & Labbé**
**P. O. Box 3527**
**Lafayette, LA 70502-3527**
**Telephone: (337) 232-9700**
**COUNSEL FOR:**
　　**Defendant/Appellee - Atlantic Casualty Insurance Company**

**Patrick J. McShane**
**Lara N. Dicristina**
**Frilot LLC**
**1100 Poydras Street – Suite #3700**
**New Orleans, LA 70163**
**Telephone: (504) 599-8000**
**COUNSEL FOR:**
　　**Defendant/Appellee - Chartis Specialty Insurance Company**

**Vincent Lee Bowers**
**Morris Bart, LLC**
**909 Poydras Street – 20th Floor**
**New Orleans, LA 70112**
**Telephone: (504) 525-8000**
**COUNSEL FOR:**
　　**Defendant/Appellee - Gregory Holroyd**

**Katherine P. Martin**
**Gretchen H. Mayard**
**Martin Mayard, L.L.C.**
**P. O. Box 81338**
**Lafayette, LA 70598-1338**
**Telephone: (337) 291-2440**
**COUNSEL FOR:**
　　**Defendant/Appellee - State Farm Mutual Automobile Insurance Company**

2

**David Oliver Way**
**Oliver & Way, L.L.C.**
**P. O. Box 82447**
**Lafayette, LA 70598-2447**
**Telephone: (337) 988-3500**
**COUNSEL FOR:**
    **Defendant/Appellee - Dewayne K. Spriggs, Individually**

**Brad Jeremy Brumfield**
**Law Office of Keith S. Giardina**
**9100 Bluebonnet Centre Boulevard - Suite 300**
**Baton Rouge, LA 70809**
**Telephone: (225) 293-7272**
**COUNSEL FOR:**
    **Defendant/Appellee - Mallard Environmental, Inc.**

**Michael J. Williamson**
**Plauche, Smith & Nieset**
**P. O. Drawer 1705**
**Lake Charles, LA 70602**
**Telephone: (337) 436-0522**
**COUNSEL FOR:**
    **Defendant/Appellee - Dewayne K. Spriggs, Individually**

**Erin N. Hargrave**
**Borne & Wilkes, LLP**
**P. O. Box 4305**
**Lafayette, LA 70502-4305**
**Telephone: (337) 232-1604**
**COUNSEL FOR:**
    **Defendants/Appellees - Gregory Holroyd and Town of Sunset**

**Prezemek Lubecki**
**Morris Bart, LLC**
**909 Poydras Street - 20th Floor**
**New Orleans, LA 70112-4030**
**Telephone: (504) 599-3212**
**COUNSEL FOR:**
    **Defendant/Appellee - Gregory Holroyd**

**Catherine Fornias Giarrusso**
**Barrasso, Usdin, et al.**
**909 Poydras Street - Suite 2400**
**New Orleans, LA 70112**
**Telephone: (504) 589-9700**
**COUNSEL FOR:**
    **Defendant/Appellee - Wausau Business Insurance Company**

**PICKETT, Judge.**

Shane Eads, an offshore diver, was providing temporary help to his wife's step-father in an unrelated business in a highway work zone when he was caught between a crashing vehicle and a stationary trailer. He sustained crushing injuries and the loss of his right leg. Mr. Eads appeals the granting of a motion for summary judgment in favor of Atlantic Casualty Insurance Company (Atlantic), arguing an ambiguity exists in the coverage extended to a "temporary worker" such as Mr. Eads which renders the policy inapplicable to him. We have reviewed Atlantic's policy in light of Mr. Eads' contentions and find that Atlantic's policy is not ambiguous. Accordingly, we affirm the trial court's grant of summary judgment. For the same reasons, we affirm the trial court's denial of Mr. Eads' cross-motion for summary judgment and his motion for new trial.

## ASSIGNMENTS OF ERROR

We must decide whether the trial court erred in granting summary judgment to Atlantic and in denying Mr. Eads' cross-motion for summary judgment and motion for new trial.

## FACTS AND PROCEDURAL HISTORY

Mr. Eads had been permanently employed as an offshore diving supervisor for six years when he agreed to provide his wife's step-father, Dewayne Spriggs, with temporary labor on a commercial job in the Town of Sunset, Louisiana. Mr. Spriggs owned a one-man sewer clean-out company, Dewayne K. Spriggs, LLC, d/b/a D/Von's Jetter Rooter Service.

On January 25, 2011, Mr. Eads was working with Spriggs on Duffy Avenue on a sewer clean-out for the Town of Sunset. Using Spriggs's truck, they had pulled an equipped jetting trailer over the manhole and fed a protective sleeve

down into a pipe to protect the jetting hose. Mr. Eads tied the sleeve to the trailer. Mr. Spriggs fed the hose out, and Mr. Eads worked it into the sewer line. They were retracting the hose when a motorist suddenly crashed into the work zone, striking the Town of Sunset's parked truck and propelling it into Mr. Eads, pinning him between the Sunset truck and the jetting trailer.

Mr. Eads suffered numerous serious injuries, including a crushed pelvis, fractured lumbar vertebrae, severed urethra, and injuries so severe to his right leg that it had to be amputated. He sought workers' compensation benefits from Spriggs LLC's insurer, Louisiana Workers' Compensation Corporation (LWCC), but learned that Spriggs LLC did not have workers' compensation coverage in force because his policy had lapsed and was cancelled in December 2010.

Mr. Eads and his wife, on behalf of themselves and their two minor children (collectively referred to as "Eads" or "Mr. Eads"), brought suit against the defendants and their insurers. Pursuant to the original and supplemental petitions, the Eads filed suit against the motorist and his insurer; the Town of Sunset and its employee at the work site; trailer owner, Mallard Environmental, Inc., and its primary and excess insurers; Spriggs LLC, Spriggs individually; and three insurance carriers providing insurance to Spriggs and/or his LLC. Eads settled with the motorist and his insurer; the Town of Sunset and its employee; State Farm Mutual Automobile Insurance Company, the automobile insurer of Spriggs individually; and Spriggs LLC's excess liability insurer, Chartis Specialty Insurance Company. Eads also obtained a default judgment against Spriggs LLC for workers' compensation benefits which were not available. The judgment was not paid, and Eads sued Spriggs LLC in tort pursuant to La.R.S. 23:1032.1.

5

Spriggs LLC was the named insured on a commercial general liability (CGL) policy written by Atlantic. The trial court granted Atlantic's motion for summary judgment and denied Eads's cross-motion, finding that an endorsement to the policy replaced the definition of "employee" and that Mr. Eads was not covered under the policy. Eads's claims for general liability coverage from Atlantic were dismissed with prejudice. A subsequent judgment denied Eads's motion for a new trial on the Atlantic policy. Eads appeals both judgments.

The trial court granted an exception of no cause or right of action to Dewayne Spriggs, individually. While Eads's motion for appeal indicated that the judgment granting the exception was being appealed, Eads did not assign error or mention the exception in any manner in his appellate brief to this court. Mr. Spriggs filed an appellee brief asserting that Eads's objection to the exception in his favor had been abandoned. We agree and do not address the exception and dismissal granted to Dewayne Spriggs, individually.

## STANDARD OF REVIEW

Whether the language of a contract is ambiguous is a question of law that subjects the judgment to a de novo standard of review on appeal. *Cluse v. H & E Equipment Servs., Inc.*, 09-574 (La.App. 3 Cir. 3/31/10), 34 So.3d 959, *writ denied*, 10-994 (La. 9/17/10), 45 So.3d 1043. "When an appellate court reviews a district court judgment on a motion for summary judgment, it applies the *de novo* standard of review, 'using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate.'" *Gray v. Am. Nat'l Prop. & Cas. Co.*, 07-1670, p. 6 (La. 2/26/08), 977 So.2d 839, 844 (quoting *Supreme Servs. & Specialty Co., Inc. v. Sonny Greer*, 06-1827, p. 4 (La. 5/22/07), 958 So.2d 634, 638). The motion for summary judgment shall be granted if the

6

pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B).

## LAW AND DISCUSSION

Mr. Eads initially sought workers' compensation benefits from Spriggs LLC but obtained a default judgment against the company that was not paid or appealed because the company's workers' compensation policy lapsed for nonpayment before he was injured. After the delays for an appeal had run and the sixty days for paying the judgment had expired, Mr. Eads amended his tort petition and added Spriggs LLC as a defendant, asserting negligence claims and a tort cause of action under La.R.S. 23:1032.1.[1] The Office of Workers' Compensation (OWC) file is part of this record and contains documents supporting the default judgment obtained by Mr. Eads against Spriggs LLC. Specifically, the file contains the

---

[1] Louisiana Revised Statutes 23:1032.1 provides in pertinent part:

A. When a direct employer, not the statutory employer or special employer, knowingly fails to secure workers' compensation insurance or proper certification of self-insured status pursuant to R.S. 23:1168, and fails to pay a final judgment for sixty days after the parties have exhausted their rights of appeal and no other insurance or self-insurance policy or contract of workers' compensation coverage has paid the benefits due under this Chapter, then the employee or the legal dependent of a deceased employee may elect to sue the direct employer for all legal damages. Should the direct employer offer to pay the judgment for workers' compensation benefits and the employee or the legal dependent of a deceased employee accepts the offer of payment, such payment shall also discharge and satisfy the direct employer's obligation for legal damages under this Section, if the direct employer also reimburses the employee or the legal dependent of a deceased employee for all costs and expenses, including attorney fees, incurred by the employee or the legal dependent of a deceased employee in connection with the claim for legal damages to the date of the payment of the workers' compensation judgment. Should the employee or the legal dependent of a deceased employee obtain a judgment on the cause of action for legal damages, the employee or the legal dependent of a deceased employee may elect to recover from the direct employer the greater of the judgment for legal damages or the judgment for workers' compensation benefits, but the employee or the legal dependent of a deceased employee shall be limited to recovery of only one such judgment, and the payment of the judgment elected shall discharge both judgments.

cancellation notice dated December 9, 2010, stating that Spriggs LLC's workers' compensation coverage would be cancelled as of noon on December 23, 2010, for failure to pay the premium and the default judgment against Spriggs LLC. Atlantic does not contest that Mr. Eads is entitled to sue Spriggs LLC in tort pursuant to La.R.S. 23:1032.1 and the OWC default judgment. Accordingly, we consider only whether Atlantic's policy excludes Mr. Eads from coverage.

Because the issues presented on de novo review involve insurance coverage, we apply the rules on the interpretation of contracts.

> An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code. If the words of the policy are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent and the agreement must be enforced as written. An insurance policy should not be interpreted in an unreasonable or strained manner so as to enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. The policy should be construed as a whole and one portion thereof should not be construed separately at the expense of disregarding another. If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer who issued the policy and in favor of the insured.

*Hebert v. Webre,* 08-60, pp. 4-5 (La. 5/21/08), 982 So.2d 770, 773-74 (citations omitted).

> [I]n determining whether an insurance policy provides coverage, every provision of the policy must be read and interpreted, particularly the provisions relating to what is insured, usually contained in a section entitled "Insuring Agreement," the provisions relating to who is insured, usually contained in a section entitled "Who Is An Insured," and the provisions relating to what is excluded from coverage, usually contained in a section entitled "Exclusions." Only then can a determination of coverage be made. *See Magnon v. Collins*, 98-2822 (La. 07/07/99), 739 So.2d 191.

*Succession of Fannaly v. Lafayette Ins. Co.*, 01-1355, p. 6 (La. 1/15/02), 805 So.2d 1134, 1139.

## ATLANTIC'S POLICY

At the time of the accident, Spriggs LLC, d/b/a D/Von's Jetter Rooter Service was the named insured on a CGL policy with Atlantic, No. L034002841. The Atlantic policy provides in Section I – Coverage A – Bodily Injury and Property Damage Liability, that Atlantic "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury.'" When Eads named Atlantic as a defendant, Atlantic invoked Exclusion e of Combination Endorsement AGL-055 (the endorsement) that is attached to Spriggs LLC's policy to deny Eads coverage. Mr. Eads filed a cross-motion for summary judgment, seeking a judgment recognizing him as an insured under Atlantic's policy. The trial court granted Atlantic's motion for summary judgment and denied Eads's cross-motion. Eads asserts error on the part of the trial court based upon ambiguity that he contends is created by the endorsement.

When an endorsement is affixed to an insurance policy, the two must be read together. If the endorsement conflicts with the policy in any respect, the endorsement prevails. *Zeitoun v. Orleans Parish Sch. Bd.*, 09-1130 (La.App. 4 Cir. 3/3/10), 33 So.3d 361, *writ denied*, 10-752 (La. 6/4/10), 38 So.3d 303. Accordingly, if coverage is provided in the policy, but the endorsement excludes coverage, there is no coverage. *Id.*

"Exclusionary provisions in insurance contracts are strictly construed against the insurer, and any ambiguity is construed in favor of the insured. *Garcia v. St. Bernard Parish Sch. Bd.*, 576 So.2d 975, 976 (La.1991)." *Ledbetter v. Concord Gen. Corp.*, 95-809, p. 4 (La. 1/6/96), 665 So.2d 1166, 1169. "[A]n ambiguity exists in an insurance policy when the pertinent provision can reasonably be

construed in two different ways." *McCarthy v. Berman*, 95-1456, p. 8 (La. 2/28/96), 668 So.2d 721, 726.

Whether a policy endorsement creates an ambiguity must be considered as follows:

> [I]f the exclusion found in the endorsement provides a narrower scope of coverage than the provisions in other sections of this policy, such differences do not necessarily create ambiguity. The extent of coverage is determined by the parties' intent as reflected by the words of the policy; the intent is to be determined in accordance with the general, ordinary, plain and popular meaning of the policy's words, unless those words have acquired a technical meaning. *Ledbetter v. Concord General Corporation*, 95-0809 (La. 01/06/96), 665 So.2d 1166. The very purpose of exclusions added through endorsements is to change what otherwise would be the meaning of the terms in the policy or the scope of the coverage. The use of such endorsements allows the parties to adjust a policy without having to confect an entire new policy in place of a "standard" policy.

*Sims v. Guerrero*, 39,091, pp.4-5 (La.App. 2 Cir. 12/15/04), 889 So.2d 1184, 1186.

Atlantic's motion for summary judgment is based on Exclusion e contained in the endorsement which states, in pertinent part:

**EXCLUSION OF INJURY TO EMPLOYEES, CONTRACTORS AND EMPLOYEES OF CONTRACTORS**

Exclusion e. **Employer's Liability of Coverage A. Bodily Injury and Property Damage Liability (Section I-Coverages)** is replaced by the following:

This insurance does not apply to:

    (i)    "bodily injury" to any "employee" of any insured arising out of or in the course of:

    (a) Employment by any insured; or
    (b) Performing duties related to the conduct of any insured's business"

. . . .

With respect to this endorsement only, the definition of "Employee" in the DEFINITIONS (Section V) of CG0001 is replaced by the following:

10

**"Employee"** shall include, but is not limited to, any person or persons hired, loaned, leased, contracted, or volunteering for the purpose of providing services to or on behalf of any insured, whether or not paid for such services and whether or not an independent contractor.

This definition of "employee" replaces the definition of "employee" contained in Section V of the policy "with respect to this endorsement only" while "[a]ll other terms and conditions remain unchanged."

Eads argues that Exclusion e of the endorsement creates an ambiguity because he was a temporary worker of Spriggs LLC and Exclusion e of Atlantic's policy provided coverage to temporary workers. Exclusion e of the policy provides that the insurance does not apply to "bodily injury" to an "employee." Section V – DEFINITIONS of the policy defines "employee" as:

5. "Employee" includes a "leased worker." "Employee" does not include a "temporary worker."

Therefore, Mr. Eads is correct that Exclusion e of Atlantic's policy does not apply to a temporary worker, such as himself, because the definition of "employee" expressly removes him from the excluded group. He is not correct, however, that the definitions in Exclusion e of the policy and Exclusion e of the endorsement create an ambiguity.

Atlantic argues that because Mr. Eads was "hired" for the job in Sunset, the endorsement's definition of "employee" unambiguously applies to him. It cites *Spell v. Mallett, Inc.*, 06-1477 (La.App. 3 Cir. 5/2/07), 957 So.2d 262, in support of its position. In *Spell*, this court found that the same endorsement in another Atlantic policy excluded coverage for the plaintiff who was injured while working short-term for the insured.

Eads contends, however, that because Atlantic's policy definitions of "temporary worker" and "leased worker" have been left untouched by the

11

endorsement, and the definition of "leased worker" still states: "Leased worker" does not include a "temporary worker," an ambiguity is created by the endorsement's definition of "employee."

Exclusion e of the endorsement replaces the Employer's Liability of Coverage A. Bodily Injury and Property Damage Liability. Therefore, the policy's definition of "employee" is specifically replaced by the endorsement's definition of "employee," and "any person . . . hired . . . for the purpose of providing services to or on behalf of any insured" is an employee excluded from coverage. Though the terms "leased worker" and "temporary worker" appear in the definition of "employee" and are each defined by the policy, those terms have no impact on the endorsement because they do not appear in the endorsement.

The fact that Atlantic's policy's definition of "employee" expressly excludes "temporary worker" is of no importance because the endorsement's definition of "employee" excludes "temporary worker." Louisiana Civil Code Article 2050 provides that "[e]ach provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." When the policy is read as a whole, i.e., the policy and the endorsement, Exclusion e of the endorsement excludes coverage for Mr. Eads because he is "any person . . . hired . . . for the purpose of providing services to or on behalf of any insured" and he seeks recovery for "bodily injury."

*Barousse v. Western World Insurance Co.*, 07-1264 (La.App. 3 Cir. 3/5/08), 978 So.2d 1129, presented a similar situation. The plaintiff argued that the policy was ambiguous because the application signed by the insured stated, "I agree to promptly report all full and part time drivers," but neither the application nor the policy defined "promptly." The endorsement at issue in *Barousse* provided:

> To add a driver to the list of drivers, you must notify your agent or insurance producer in writing of the name, date of birth, date of hire and driver's license number of the additional driver before that driver operates a covered "auto."

*Id.* at 1131. Relying on Article 2050, this court concluded:

> Any ambiguity arguably created by the term 'promptly' in the application is resolved when the policy is construed as a whole. The Listed Drivers Coverage endorsement clearly and unambiguously provides what 'promptly' means and what [the insured] had to do to obtain $100,000 coverage for its drivers. Therefore, we need not determine whether the 'promptly' is ambiguous.

*Id.*

As in *Barousse*, any ambiguity arguably created by the policy's definitions of "employee," "temporary worker," and "leased worker" is resolved when Atlantic's policy is construed as a whole. Accordingly, we affirm the grant of summary judgment in favor of Atlantic and the denial of summary judgment in favor of Mr. Eads on his cross-motion for summary judgment, finding no issue of material fact regarding coverage for his injuries under the Atlantic policy.

## MOTION FOR NEW TRIAL

Mr. Eads appeals the denial of the motion for new trial he filed regarding the trial court's grant of summary judgment in favor of Atlantic. He argues that a temporary worker, like himself, is not included in the employee exclusion of the endorsement, "not because the endorsement says this, but because the original definition of 'employee' in the policy specifically excluded 'temporary worker[]' and the amended definition just failed to include a temporary worker."

Louisiana Code of Civil Procedure Article 1972 lists the peremptory grounds for a motion for new trial, as relevant herein:

> A new trial shall be granted, upon contradictory motion of any party, in the following cases:

(1) When the verdict or judgment appears clearly contrary to the law and the evidence.

(2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.

Further, La.Code Civ.P. art. 1973 addresses the discretionary grounds for a motion for new trial, stating that "[a] new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law."

The grounds for new trial potentially applicable here are set forth in La.Code Civ.P. art. 1972(1) and Article 1973. As explained above, Mr. Eads is excluded from coverage under Atlantic's policy because he falls within the plain terms of the endorsement's definition of "employee." Accordingly, his motion for a new trial was properly denied.

## CONCLUSION

The grant of summary judgment in favor of Atlantic and the denial of summary judgment in favor of Eads on general liability coverage are affirmed. The denial of Eads's motion for new trial is also affirmed. Costs of this appeal are assessed to Eads.

**AFFIRMED.**

SHANE EADS, ET AL.

VERSUS

CHARTIS SPECIALTY INS. CO., ET AL.


**THIBODEAUX, Chief Judge, dissenting.**


Exclusion "e" provides that the insurance does not apply to "bodily injury" to an "employee." Policy section V – DEFINITIONS defines "employee" as:

> 5. "Employee" includes a "leased worker." "Employee" does not include a "temporary worker."

Hence, the original exclusion "e" does not apply to a temporary worker such as Eads, as the definition of "employee" expressly removes him from the excluded group. While definition 5 above still remains in the original policy, along with the definitions of "temporary worker" and "leased worker," exclusion "e" was replaced via endorsement AGL-055[1] which contains its own definition of

---

[1] EXCLUSION OF INJURY TO EMPLOYEES, CONTRACTORS AND EMPLOYEES OF CONTRACTORS

Exclusion e. **Employer's Liability of Coverage A. Bodily Injury and Property Damage Liability (Section I-Coverages)** is replaced by the following:

This insurance does not apply to:

(i)    "bodily injury" to any "employee" of any insured arising out of or in the course of:

    (a)    Employment by any insured; or
    (b)    Performing duties related to the conduct of any insured's business;

(ii)    "bodily injury" to any "contractor" for which any insured may become liable in any capacity; or

(iii)    "bodily injury" sustained by the spouse, child, parent, brother or sister of any "employee" of any insured, or of a "contractor," as a consequence of any injury to any person as set forth in paragraphs (i) and (ii) of this endorsement.

"employee" that addresses almost every possible kind of employee but does not include, exclude, or address the "temporary" worker in any manner:

> "**Employee**" shall include, but is not limited to, any person or persons hired, loaned, leased, contracted, or volunteering for the purpose of providing services to or on behalf of any insured, whether or not paid for such services and whether or not an independent contractor.

AGL-055 states that the new definition replaces the original "with respect to this endorsement only" and that "[a]ll other terms and conditions remain unchanged." According to Atlantic, since Mr. Eads was "hired" for the job in Sunset, the new expansive definition of "employee" unambiguously applies to him. In support of its position, Atlantic cites and the majority relies upon *Spell v. Mallett, Inc.*, 06-1477 (La.App. 3 Cir. 5/2/07), 957 So.2d 262, which found that the same endorsement in another Atlantic policy excluded coverage for the plaintiff who was injured while working short-term for the insured. When considering the policy as a whole, pursuant to *Hebert v. Webre*, 08-60 (La. 5/21/08), 982 So.2d 770, I find *Spell* distinguishable from the present case.

---

This exclusion applies to all claims and "suits" by any person or organization for damages because of "bodily injury" to which this exclusion applies including damages for care and loss of services.

This exclusion applies to any obligation of any insured to indemnify or contribute with another because of damages arising out of "bodily injury" to which this exclusion applies, including any obligation assumed by an insured under any contract.

With respect to this endorsement only, the definition of "Employee" in the DEFINITIONS (Section V) of CG0001 is replaced by the following:

> "**Employee**" shall include, but is not limited to, any person or persons hired, loaned, leased, contracted, or volunteering for the purpose of providing services to or on behalf of any insured, whether or not paid for such services and whether or not an independent contractor.

As used in this endorsement, **"contractor"** shall include but is not limited to any independent contractor or subcontractor of any insured, any general contractor, any developer, any property owner, any independent contractor or subcontractor of any general contractor, any independent contractor or subcontractor of any developer, any independent contractor or subcontractor of any property owner, and any and all persons working for and or providing services and or materials of any kind for these persons or entities mentioned herein.

All other terms and conditions remain unchanged.

AGL-055 8/05

In *Spell*, the description of the insured's business was carpentry and the construction of residential property, which included the barn being constructed at the time of injury. Mr. Spell was a carpenter engaged in his trade; he fell squarely under the new definition of "employee;" and there was no issue of his temporary status or the different treatment of "temporary" workers in the policy. Here, the policy definitions of "temporary worker" and "leased worker" have been left untouched by the endorsement, and the definition of "leased worker" still states: *"Leased worker" does not include a "temporary worker."* These issues were not considered by the *Spell* court, and it is legally tenuous for the majority to place any reliance on *Spell*.

Further, the record in *Spell* indicated that the insured, Mallett, purchased Atlantic endorsements to cover the work of his contractors and their employees, not to provide an additional avenue of recovery for employees already covered by Mallet's workers' compensation policy. We do not have those facts in this record. In fact, Spell was receiving workers' compensation benefits under Mallett's other policy, and the workers' compensation carrier intervened to recover its payments from the Atlantic CGL policy.

While I acknowledge that endorsement exclusion "e" appears to be identical in both cases, the issues were entirely different in Spell, and the endorsement cannot be viewed in a vacuum. The endorsement clearly targets "contractors," more fully explained below. Before the endorsement in the present case, Spriggs's policy did not even contain a definition for "contractor." Whether that was true of the policy in *Spell* is unknown. The endorsement in *Spell* exists in conjunction with another endorsement relating to contractors and in a policy issued to a construction company that regularly hired building contractors. Spriggs's LLC was a one-man rotor-rooter operation. Spriggs testified that except for Eads, he had only had two other helpers in his eight-year-old operation.

3

Here, the trial court admitted that there was doubt surrounding the endorsement and that the policy writer could have removed this doubt by simply including temporary workers in the new definition. Atlantic even acknowledged a "lack of linguistic clarity" but distinguished it from "ambiguity." The trial court acknowledged that temporary worker was "still sitting out there" and that interpreting the new exclusion was a "close call" and a "hard decision." Doubts, close calls, hard decisions, and lack of linguistic clarity all point to ambiguity that should be interpreted against Atlantic, the insurer.

In this case, exclusion AGL-055 constitutes only one page in a ten-page endorsement. In the world of insurance contracts, the policy must be construed as a whole and one portion cannot be construed separately at the expense of disregarding another. *See Hebert v. Webre*, 982 So.2d 770.

More specifically, Atlantic's CGL form policy is a fourteen-page document. Its schedule of endorsements lists thirteen additional documents that are made part of the policy. Twelfth on the list is endorsement AGL-CO, which is itself a ten-page "Combination Endorsement" entitled, "Exclusions/Limitations - Combination Endorsement - Contractors." On page four (4) of Combination Endorsement AGL-CO is the single-page endorsement with the new exclusion "e", AGL-055, entitled, as discussed, "Exclusion of Injury to Employees, Contractors and Employees of Contractors." AGL-055 provides, as before, that the insurance does not apply to "bodily injury" to an "employee," but the new exclusion and the new definition of "employee" expressly address contractors to such an extent that it is clear that "contractors" are the target of the endorsement.

The original exclusion "e" did not mention contractors or any other description of worker. In fact, it specifically stated that the exclusion ***did not*** apply to liability assumed by the insured under an "insured contract." The original policy did not contain a definition for contractors in Section V – DEFINITIONS.

4

Exclusion "e" in AGL-055, on the other hand, adds three provisions addressing contractors above the new definition of "employee," which includes contractors. Below the new definition, it devotes an entire paragraph to defining "contractor;" and it expressly names general contractors, independent contractors, subcontractors, including those who work for developers, property owners, or other contractors. Including its use in the title, "contractor" is referenced approximately eighteen times while "employee" appears only six times.

Accordingly, the endorsement is very comprehensive and all-inclusive; it is clearly meant to bring contractors of all descriptions into the realm of people whose bodily injuries are excluded from coverage. The extent of the detail signals a complete turnaround in the policy's treatment of contractors. Likewise, the new definition of "employee" expressly includes leased, loaned, hired, contracted, and volunteering persons in the realm of the newly-excluded. Yet nowhere does the new exclusion mention "temporary" workers, and at its end it states that *"[a]ll other terms and conditions remain unchanged."* One is left to ponder the rationale for this omission. It is quite possible that temporary people were omitted from the endorsement because in some jurisdictions they are not covered by workers' compensation laws. Such a reason applies specifically to Mr. Eads in this case. Given the all-inclusiveness and the extent of detail in the endorsement, its omission of "temporary" workers is glaring. This is particularly true when the unchanged provisions are examined.

The policy's Section V contains twenty-two (22) definitions. In addition to number 5, "employee," it contains three other pertinent definitions, numbers 10, 19, and 20. Considered together, they state:

> 5. "Employee" includes a "leased worker." "Employee" does not include a "temporary worker."
>
> . . . .

5

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."

. . . .

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee," and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

While it is true that the old definition of "employee" expressly *excludes* "temporary worker," and the new definition of "employee" in AGL-055 does not, it is also true that AGL-055 does not *include* "temporary worker," or address the term in any way. In fact, the entire ten-page Combination Endorsement AGL-CO, of which AGL-055 is a part, does not address "temporary worker" on any of its ten pages. AGL-CO does, however, on page 10, address and delete Definition 20, "Volunteer worker," from Section V – DEFINITIONS. More specifically, on page 10 of Combination Endorsement AGL-CO is exclusion CG 21 66A, entitled "Exclusion – Volunteer Workers." Thus, of the four above definitions in Section V of the original policy, one was replaced (No. 5. "Employee") and one was deleted (No. 20. "Volunteer worker") in the Combination Endorsement that is the subject of this litigation.

Original definitions 10 ("Leased worker") and 19 ("Temporary worker") were left untouched by the endorsements. Endorsement AGL-055 did not change the definition of "leased worker" but specifically included "leased" persons in its new definition of "employee." The unchanged definition of "leased worker" still specifically excludes "temporary worker" the way the original definition of "employee" did. Now that leased worker is an employee, for

6

purposes of AGL-055, and leased worker still excludes temporary worker, the result is the same, and it could be seen as redundant for the new definition of "employee" to also state that it excludes "temporary worker." Temporary worker has been excluded by the exclusion to coverage by reference, as it was never intended to be included in the employee exclusion to coverage. If it had been, AGL-055 would have expressly included it. This reasoning is consistent with the fact that the new definition of the excluded "employee" includes every kind of worker except a "temporary worker." Again, endorsement AGL-055 indicates at the bottom, that except for the changes expressed, *all other terms and conditions remain unchanged*.

Moreover, exclusion/endorsement CG 21 66A also deletes "volunteer workers" from Section II – Who Is An Insured, while leaving "employees" as insureds, for their acts against others under limited circumstances. Because CG 21 66A is a separate endorsement from AGL-055, though both are part of Combination Endorsement AGL-CO, the original definition of "employee" stands as to CG 21 66A, since the new definition applies only to exclusion/endorsement AGL-055. The new definition of "employees" could not apply to CG 21 66A because the new definition includes "volunteering" persons, which would conflict with CG 21 66A's deletion of "volunteer workers" while it continued to maintain "employees" as insureds. This is additional evidence that the endorsements are consistent in including and excluding terminology and that AGL-055 would have said "temporary worker" if it meant "temporary worker."

Is it also reasonable to suggest that "temporary worker" was *tacitly* implied in AGL-055's reference to a "hired" person? After all, Mr. Eads *was* "hired," and he *was* "providing services to" the insured, D/Von's Jetter Rooter Service. I conclude that the pertinent provision can be reasonably construed in two

7

different ways, thereby rendering it ambiguous under *McCarthy v. Berman*, 95-1456 (La. 2/28/96), 668 So.2d 721.

Accordingly, in considering the policy and the ten-page Combination Endorsement as a whole, I find ambiguity in the coverage extended to "temporary workers" such as Mr. Eads. Thus, I interpret the policy against the writer, Atlantic, and I conclude that Mr. Eads is not excluded from general liability coverage under the Atlantic policy. Accordingly, I would reverse the granting of summary judgment in favor of Atlantic and render judgment in favor of Mr. Eads on his cross-motion for summary judgment, finding no issue of material fact regarding coverage for his injuries under the Atlantic policy.

For the foregoing reasons, I dissent.