788 So.2d 544 (2001)
Aaron SIMON and Delrick Raymond
v.
VARIETY WHOLESALERS, INC. d/b/a Super 10 Stores.
No. 2000 CA 0452.
Court of Appeal of Louisiana, First Circuit.
May 11, 2001.
Rehearing Denied July 19, 2001.
*546 William R. Mustian, III, Metairie, LA, for plaintiffs-appellants Aaron Simon and Delrick Raymond.
Cyrus J. Greco, Baton Rouge, LA, for defendant-appellee Variety Wholesalers, Inc. d/b/a Super 10 Stores.
BEFORE: GONZALES and PETTIGREW, JJ., and SEXTON,[1] J. Pro Tem.
PETTIGREW, Judge.
In this defamation case, plaintiffs challenge the trial court's judgment granting summary judgment in favor of defendant. For the reasons that follow, we affirm.

FACTS AND PROCEDURAL HISTORY
On December 8, 1995, plaintiffs, Aaron Simon and Delrick Raymond, and a companion were customers in a Super 10 store located in Donaldsonville, Louisiana. A store employee, Lorraine Kramer, "noticed the men acting suspiciously as they shopped." While the men were still in the store, Ms. Kramer was approached by another customer who told Ms. Kramer that she had observed one of the three men place an item under his shirt. Ms. Kramer approached the men and observed that one of them had a "bulging object" under his shirt. According to Ms. Kramer, she began following the men and overheard them joking with each other, as the man with the bulging item under his shirt stated, "At least I got one of her Christmas gifts." Ms. Kramer subsequently reported this suspicious behavior to her assistant manager, Paula Wendt, who in turn notified the store manager, Helen Felps. Ms. Felps contacted the Donaldsonville Police Department and asked them to do a "walk-through" of the store.
After leaving the store with their purchases, the three men were met in the parking lot by several officers from the Donaldsonville Police Department. The officers asked the men to return to the store so that their bags could be checked against their receipt. Once it was determined that the contents of the bag matched the receipt, the men were allowed to leave. Ms. Kramer indicated that the men were not searched, although she advised the officers that one of the men had something under his shirt.
On May 15, 1996, Aaron Simon and Delrick Raymond (hereinafter collectively referred to as "plaintiffs") filed suit against Super 10 Stores alleging that they were "wrongfully and publicly accused of shoplifting by employees of the Super 10 store, and as a result, were publicly detained, searched and questioned by police officers." Plaintiffs further asserted that the store's employees acted negligently and intentionally in (1) "recklessly accusing [them] of shoplifting in public in front of a large number of people;" (2) "failing to inquire of [them] before accusing them of shoplifting;" and (3) "insisting that police detain and question [them] despite having no good faith belief that [they] had shoplifted any items."
*547 In response to the plaintiffs' petition for damages, Variety Wholesalers, Inc. d/b/a Super 10 Stores ("Variety") appeared, entering a general denial to the plaintiffs' allegations. In a supplemental answer filed on September 16, 1997, Variety asserted that it was not liable for the actions of the police officers as they were not its employees or agents. In the alternative, Variety alleged that if it was found responsible for the actions of the police officers, then "said actions were pursuant to La. C.Cr.P. art. 215 which authorizes a merchant to detain and question a person suspected of shoplifting as well as for arrest by a peace officer."
On February 20, 1998, Variety filed a motion for summary judgment alleging that there were no material issues in dispute and that they were entitled to judgment as a matter of law. The trial court denied the motion, and Variety applied for a supervisory writ with this court under Docket No. 98 CW 1229. The proceedings were stayed pending resolution of the writ application. Subsequently, on June 2, 1998, Variety filed a second supplemental answer, asserting "that anything that was told to Officers of the Donaldsonville Police Department by [its] employees on December 8, 1995, regarding the plaintiffs herein, was done so pursuant to qualified privilege."
On November 3, 1998, this court granted the writ application in Docket No. 98 CW 1229, reversing the trial court's judgment denying Variety's motion for summary judgment. Thereafter, plaintiffs filed an application for rehearing, which was granted in part and denied in part. In a decision rendered on January 25, 1999, this court found as follows:
WRIT GRANTED IN PART; DENIED IN PART. Respondents have failed to demonstrate that they can produce sufficient evidence to prove the elements of their case as it relates to the torts of false arrest or malicious prosecution. Under La.C.C.P. art. 966, there exist no genuine issues as to material fact relating to these claims and the trial court erred in declining to grant relator's motion for summary judgment insofar as these claims were concerned. However, as relator did not timely present its qualified privilege defense, the motion for summary judgment was properly denied on the defamation issue. Accordingly, the writ application is granted insofar as the trial court judgment denying relator's motion for summary judgment is reversed to the extent it relates to the false arrest and malicious prosecution claims. In all other respects, the writ application is denied.
Simon, et al. v. Super 10 Stores, 98 CW 1229 (La.App. 1 Cir. 1/25/99).
Variety filed a second motion for summary judgment on April 13, 1999, urging that there was no genuine issue as to material fact regarding the defamation issue and that summary judgment should be granted in its favor. In support of its position, Variety submitted the affidavit of Lorraine Kramer and various excerpts from the depositions of Lorraine Kramer and Helen Felps. Variety asserted that it had "rebutted any presumption of malice with the affidavit of Ms. Kramer, establishing her reasonable cause to believe the three men were working together to steal an item from the store." The matter was argued on August 9, 1999, at which time the trial court granted summary judgment in favor of Variety and dismissed plaintiffs' claims with prejudice. A judgment in accordance therewith was signed by the court on August 12, 1999.
It is from this judgment that plaintiffs have appealed. In a single assignment of error, plaintiffs assert that the trial court *548 "erred in granting summary judgment on the defamation claim which can only be resolved by a trial at which the court hears live testimony and makes a credibility determination."

SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. Sanders v. Ashland Oil, Inc., 96-1751, p. 5 (La.App. 1 Cir. 6/20/97), 696 So.2d 1031, 1034, writ denied, 97-1911 (La.10/31/97), 703 So.2d 29. Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact, and that mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966 B. Summary judgment is favored and "is designed to secure the just, speedy, and inexpensive determination of every action." La.Code Civ.P. art. 966 A(2).
The initial burden of proof remains with the mover and is not shifted to the non-moving party until the mover has properly supported the motion and carried the initial burden of proof. Only then must the non-moving party "submit evidence showing the existence of specific facts establishing a genuine issue of material fact." Scott v. McDaniel, 96-1509, p. 5 (La.App. 1 Cir. 5/9/97), 694 So.2d 1189, 1191-1192, writ denied, 97-1551 (La.9/26/97), 701 So.2d 991. If the non-moving party fails to do so, there is no genuine issue of material fact, and summary judgment should be granted. La. Code Civ.P. arts. 966 and 967.
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Sanders, 96-1751 at 7, 696 So.2d at 1035. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to this case. Walker v. Phi Beta Sigma Fraternity (RHO Chapter), 96-2345, p. 6 (La.App. 1 Cir. 12/29/97), 706 So.2d 525, 528.
We note that defamation actions have been found inordinately susceptible to summary judgment. The Louisiana Supreme Court has noted that proper summary judgment practice is essential in cases affecting First Amendment liberties, such as freedom of speech or of the press. Summary adjudication is accordingly a useful procedural tool and an effective screening device for avoiding the unnecessary harassment of defendants by unmeritorious actions that threaten the right of free speech. Mashburn v. Collin, 355 So.2d 879, 890-91 (La.1977). For these reasons, a defamation plaintiff who opposes summary judgment bears a burden of proof more onerous than usual. Among other things, the plaintiff-opponent must show that he can produce sufficient evidence at trial to prove the elements of his case with convincing clarity. Cavalier v. Houma Courier Newspaper Corporation, 472 So.2d 274, 276 (La.App. 1 Cir.1985).

LAW AND ANALYSIS
In order to maintain an action in defamation, the plaintiff must prove the following elements: (1) defamatory words; (2) publication; (3) falsity; (4) malice, actual or implied; and (5) resulting injury. Brannan v. Wyeth Laboratories, Inc., 526 So.2d 1101, 1105 (La.1988); Cangelosi v. Schwegmann Brothers Giant Super Markets, 390 So.2d 196, 198 (La.1980). A statement that imputes the commission of a crime to another is defamatory per se *549 and as a result, falsity and malice are presumed, but not eliminated as requirements. Defendant then bears the burden of rebutting the presumption. Redmond v. McCool, 582 So.2d 262, 265 (La.App. 1 Cir.1991).
Privilege is a defense to a defamation action. Redmond, 582 So.2d at 264. A qualified privilege exists whenever a defamatory communication is made: (1) in good faith, (2) on a matter in which the person making the communication has an interest or with regard to which he has a duty, or (3) to a person with a corresponding interest or duty. Matherne v. Response Instrument Service & Engineering Corporation, 533 So.2d 1011, 1017 (La. App. 1 Cir.1988), writ denied, 537 So.2d 1166 (La.1989). Good faith exists for the purpose of this privilege when the communicating party has reasonable grounds to believe the statement to be true. Redmond, 582 So.2d at 264.
In the recent case of Aranyosi v. Delchamps, Inc., 98-1325 (La.App. 1 Cir. 6/25/99), 739 So.2d 911, writ denied, 99-2199 (La.11/5/99), 750 So.2d 187, this court addressed the applicability of this privilege to a case involving statements made by an employer to law enforcement officials in the course of an investigation of criminal activity.
This privilege arises from the social necessity of permitting full and unrestricted communication concerning a matter in which the parties have an interest or duty, without inhibiting free communication in such instances by the fear that the communicating party will be held liable in damages if the good faith communication later turns out to be inaccurate. The public has an interest in possible criminal activity being brought to the attention of the proper authorities, and remarks made in good faith setting forth well-founded charges are clearly privileged. Such a privilege extends to protect from liability for defamation an employer investigating suspected wrongdoing even though third persons become aware of the investigation and the subsequent discharge of an employee.
Aranyosi, 98-1325 at 7, 739 So.2d at 916 (citations omitted).
In the instant case, the evidence presented in support of Variety's motion for summary judgment reveals the following. Ms. Kramer, a store employee, noticed the plaintiffs "acting suspiciously as they shopped." A store customer subsequently advised Ms. Kramer that she had seen one of the men place an item under his shirt. Ms. Kramer then approached the men and noticed that one of them had a "bulging object" under his shirt. Thereafter, Ms. Kramer overheard the men joking with each other, as the man with the bulging item under his shirt stated, "At least I got one of her Christmas gifts." This prompted Ms. Kramer to report the incident to store management, who in turn notified the Donaldsonville Police Department that there were possible shoplifters in the store.
Plaintiffs failed to produce any evidence in opposition to Variety's motion for summary judgment. Although they filed a memorandum in opposition to the motion and referred to various deposition excerpts in support of their position, neither these excerpts nor the depositions were introduced into evidence at the hearing on August 9, 1999. Thus, plaintiffs have not satisfied their burden of showing that they could produce sufficient evidence at trial to prove the elements of their case with convincing clarity. Without such evidence, there is no issue of material fact concerning *550 plaintiffs' defamation claim, and summary judgment was properly granted.[2]

CONCLUSION
For the above and foregoing reasons, the judgment of the trial court granting summary judgment in favor of Variety and dismissing plaintiffs' claims with prejudice is affirmed. All costs associated with this appeal are assessed against plaintiffs-appellants, Aaron Simon and Delrick Raymond.
AFFIRMED.
SEXTON, J., concurs.
NOTES
[1] Judge Fred C. Sexton, Jr., retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] We note that even if plaintiffs had shown that all the elements of defamation were present, summary judgment would have still been appropriate. Based on our review of the record, we conclude that a qualified privilege exists in favor of the defendants. All of the requirements for the application of the qualified privilege to defendants' statements have been satisfied: Variety's employees had a reasonable belief that any statements they made concerning the plaintiffs were true; Variety's employees had a duty to report their concerns to law enforcement as they believed plaintiffs had stolen merchandise from their store; and obviously, the police officers had a corresponding duty to investigate any individuals suspected of criminal behavior.