STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

14-976

KIRBY A. ROY, III, ET UX.

VERSUS

NELSON BORDELON, ET AL.

**********

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2011-6536-A
HONORABLE MARK A. JEANSONNE, DISTRICT JUDGE

**********

MARC T. AMY
JUDGE

**********

Court composed of Jimmie C. Peters, Marc T. Amy, Shannon J. Gremillion, John E. Conery, and David Kent Savoie, Judges.

REVERSED IN PART AND AFFIRMED IN PART.

Peters, J., concurs in part, dissents in part, and assigns written reasons.
Gremillion, J. concurs in part, dissents in part, and assigns reasons.
Savoie, J., concurs in part and dissents in part for the reasons assigned by
    Peters, J.

C. Brent Coreil
Post Office Drawer 450
Ville Platte, LA 70586
(337) 363-5596
COUNSEL FOR PLAINTIFFS/APPELLEES:
    Kirby A. Roy, III
    Marjorie Pullin Roy

**Alissa Piazza Tassin**
**Post Office Box 429**
**Marksville,  LA 71351**
**(318) 253-6423**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **Richard Tassin**
    **Nelson Bordelon**
    **Wayne Gremillion**

**AMY, Judge.**

The plaintiffs sold two parcels of property, reserving any and all hunting rights thereon. The current owners challenged the respective reservations, eventually resulting in the filing of a criminal trespassing complaint against one of the plaintiffs by one of the defendants. The criminal proceedings were ultimately dismissed. The plaintiffs filed suit, seeking an injunction preventing the defendants from hunting on the property and also pursuing damages associated with the defendants' use of the land as well as with the criminal complaint. The trial court issued the injunction and awarded damages in connection with the defendants' issuance of hunting leases to others and for the unsuccessful criminal proceedings. The defendants appeal. For the following reasons, we reverse the trial court's award for false arrest and affirm the trial court's ruling on the injunction and the damages award associated with the hunting leases.

### Factual and Procedural Background

The dispute at issue involves two contiguous properties in Avoyelles Parish, one of which was previously owned by Kirby Roy, Jr. and his wife, Marjorie Roy, and the other property which was owned by Kirby Roy, III and his wife, Sheila Aymond Roy. In May 1980, the respective couples sold their property to John Douglas Bordelon and Ralph J. Bordelon. The Cash Deed for Mr. and Mrs. Kirby Roy, Jr.'s property indicated that they reserved the mineral rights on the property and that:

> Vendors further reserve any and all hunting rights on the property described on the attached Exhibit "A". [Tracts 1-8]

> TO HAVE AND TO HOLD said property unto said purchasers, their heirs and assigns forever.

The Cash Deed for Mr. and Mrs. Kirby Roy, III's property indicated that they also reserved the mineral rights on the property and that:

> Vendors further reserve and retain any and all hunting rights on the property described on the attached Exhibit "A" [Tracts 1 and 2].
>
> TO HAVE AND TO HOLD said property unto said purchasers, their heirs and assigns forever.

Thereafter, in 1990, the subject property was foreclosed upon and sold by Sheriff's Deed to The Farm Credit Bank of Texas. The Deed indicated that:

> Tracts 1, 2, 3, 4, 5 and 6 hereinabove described are subject also to a reservation of any and all hunting rights, reserved by Kirby A. Roy, Jr., et ux in sale to John Douglas Bordelon, et al.
>
> . . . .
>
> Tracts 7 and 8 are further made subject to a reservation of any and all hunting rights reserved by Kirby A. Roy, III, et ux in that act of sale to John Douglas Bordelon, et al.

In turn, Nelson A. Bordelon, Wayne L. Gremillion, and Richard Tassin acquired the property by Special Warranty Deed in 1991. That conveyance stated that it was "made subject to all easements, right of ways, and prescriptive rights, whether of record or not, all presently recorded restrictions, reservations, convenants, conditions, oil and gas leases, mineral severances, and other instruments, other than liens or conveyances, that affect the property[.]" The Deed's property description was annexed as Exhibit A, which reported that:

> Tracts 1, 2, 3, 4, 5 and 6 hereinabove described are subject also to a reservation of any and all hunting rights, reserved by Kirby A. Roy, Jr. et ux in sale to John Douglas Bordelon, et al.
>
> . . . .
>
> Tract 7 and 8 are further made subject to a reservation of any and all hunting rights reserved by Kirby A. Roy, III, et ux in that act of sale to John Douglas Bordelon, et al.

2

Mr. Bordelon, Mr. Gremillion, and Mr. Tassin later partitioned the property among themselves.

Throughout the period of transfers, the Roy family continued to hunt on the property. However, friction between the Roys and the new property owners developed as to whether the Roys retained the reservation of the hunting rights after the 1991 purchase by Mr. Bordelon, Mr. Gremillion, and Mr. Tassin. Mr. Gremillion filed an offense report with the Avoyelles Parish Sheriff's Department, reporting Kirby Roy, III for hunting on the property without permission. A misdemeanor summons was issued and, in turn, a warrant and affidavit for criminal trespass under La.R.S. 14:63 was issued as a result. According to the record, the matter was dismissed after grand jury proceedings.

Kirby Roy, III[1] (Mr. Roy) and his mother, Marjorie Roy,[2] filed suit in April 2011, naming Mr. Bordelon, Mr. Gremillion, and Mr. Tassin as defendants. The Roys noted their reservation of any and all hunting rights and alleged that the defendants had leased the property for hunting purposes, thereby depriving them of their hunting privileges. The Roys sought the return of the revenue the defendants derived from the hunting leases and damages that Mr. Roy alleged were due for intentional infliction of emotional distress related to the criminal proceedings brought against him for criminal trespass. The Roys also sought an injunction prohibiting the defendants "their agents, guest[s], lessees or assigns from hunting on the property[.]"

---

[1] Because Mr. Roy was married at the time of the 1980 transfer of the property, his former wife, Sheila Aymond Ducote, filed a petition in intervention in this matter and was represented by her son, Brandon Roy, via power of attorney.

[2] The record indicates that Kirby Roy, Jr. died in November 1991.

The matter proceeded to trial, with the defendants questioning whether the reservation of hunting rights was heritable and, also, whether the Roys held any such hunting rights exclusively. The trial court ultimately ruled in favor of the Roys, determining that they "are entitled to and own all of the hunting rights" on the property. The trial court further granted an injunction in favor of the plaintiffs and prohibiting the defendants, "their agents, invitees or lessees from interfering with Plaintiffs hunting rights on the properties[.]" The trial court ordered that the defendants pay the plaintiffs $12,000 that the defendants earned from issuing hunting leases. Additionally, the trial court ordered Mr. Gremillion to pay Mr. Roy $6,500 in damages for the criminal prosecution for criminal trespass. Thereafter, the trial court denied the defendants' motion for new trial.

The defendants appeal, assigning the following as error:

1) The trial court erred as a matter of law and fact by allowing in evidence submitted by plaintiffs as related to the intentions of the parties to a property transaction in 1980.

2) The trial court erred as a matter of law and evidence by denying a new trial.

3) The trial court erred as a matter of law and fact by denying a new trial based on new evidence.

4) The trial court erred as a matter of law and fact by determining that a reservation of an individual "vendor's" reservation of a right to hunt is heritable.

5) The trial court erred as a matter of law and fact by ruling that a "vendor" who reserved "hunting rights" has the right, and undefined "broad power," to have or invite "invitees" upon property which belongs to appellants.

6) The trial court erred as a matter of law and fact by ruling that damages should be awarded for "false arrest" absent any evidence of an actual arrest.

4

*Parol Evidence*

At trial, the parties jointly submitted the pertinent conveyances, each of which contained the hunting rights reservation at issue. However, the defendants' attorney objected when the Roys' attorney attempted to question Mr. Roy as to his and his father's intent in negotiating for that reservation at the time of the initial, 1980 transfers to John Douglas Bordelon and Ralph J. Bordelon. The defendants objected to that questioning, asserting that the matter should be resolved solely by reference to the conveyances. They continued to lodge that objection as the trial progressed. The defendants again challenge the trial court's consideration of such evidence in their first assignment of error. They instead suggest that, as subsequent purchasers who were not parties to the original 1980 conveyances, they were only able to reasonably rely on the four corners of the authentic acts. They argue that any error in this regard was not harmless "as this evidence affects substantial rights of the current property owners."

Louisiana Civil Code Article 1848 provides that:

Testimonial or other evidence may not be admitted to negate or vary the contents of an authentic act or an act under private signature. Nevertheless, in the interest of justice, that evidence may be admitted to prove such circumstances as a vice of consent or to prove that the written act was modified by a subsequent and valid oral agreement.

If, however, the terms of a "contract are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity and to show the intention of the parties." *McCarroll v. McCarroll*, 96-2700, p. 12 (La. 10/21/97), 701 So.2d 1280, 1286. *See* La.Civ.Code art. 2045 ("Interpretation of a contract is the determination of the

common intent of the parties."); La.Civ.Code art. 2046 ("When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."); La.Civ.Code art. 2047 ("The words of a contract must be given their generally prevailing meaning."). The question of whether a contract is ambiguous is a question of law. *Eads v. Chartis Specialty Ins. Co.*, 13-224 (La.App. 3 Cir. 2/26/14), 133 So.3d 722. It is, thus, reviewed de novo on appeal. *Id.*

The defendants' argument focuses on the intent of the initial contracting parties in their pronouncement that the vendors "reserve any and all hunting rights[.]" The parties offered differing views of the phrase, with the Roys suggesting that the open-ended phrase signaled their intent to reserve the hunting rights for future generations and not merely for the two of them as vendors. In opposition, the defendants asserted that the open-ended phrase should be applied literally, and found applicable only to Kirby Roy, Jr. and Kirby Roy, III. Below, we determine that the right reserved is heritable as a matter of law and the absence of language referencing heirs does not preclude heritability as suggested by the defendants. Additionally, and although the conveyance documents reference the reservation of "any and all hunting rights," La.Civ.Code art. 642[3] provides for consideration of the parties' intent and foresees that the contours of the right may change with time. *See also* La.Civ.Code art. 749 (providing that "[i]f the title is silent as to the extent and manner of use of the servitude, the intention of the parties is to be determined in light of its purpose.").

---

[3] Louisiana Civil Code Article 642 states: "A right of use includes *the rights contemplated or necessary to enjoyment at the time of its creation as well as rights that may later become necessary*, provided that a greater burden is not imposed on the property unless otherwise stipulated in the title." (Emphasis added.)

In any event, it is clear that the parties each discussed and presented witness testimony relating to the Kirbys' intent as sellers, if not that of the 1980 purchasers, John Douglas Bordelon and Ralph J. Bordelon. Given the parties' differing views of the phraseology used in the conveyance(s), as well as our ultimate resolution in this case regarding breadth and import of the reservation language at issue, we affirm the trial court's decision to admit the testimony and leave the trial court's ruling concerning the introduction of parol evidence undisturbed.

This assignment of error lacks merit.

*Heritability*

On the merits, the defendants question the trial court's determination that the hunting rights reserved in 1980 are heritable. The defendants note that the reservation language does not specifically state it is heritable and argue that it was strictly personal to each of the Roys in their respective 1980 conveyance.

The Civil Code provides the structure necessary for consideration of this issue. As noted by the trial court, the reservation of any and all hunting rights created a personal servitude as it "is a charge on a thing for the benefit of a person." La.Civ.Code art. 534. Specifically, the reservation now at issue is a right of use as it "confers in favor of a person a specified use of an estate less than full enjoyment." La.Civ.Code art. 639. Further, it confers "only an advantage that may be established by a predial servitude." La.Civ.Code art. 640. *See* La.Civ.Code art. 699 (providing examples of predial servitudes). *See also* La.Civ.Code art. 640 (*comment (b)* explaining that: "fishing or hunting rights and the taking of certain fruits or products from an estate may likewise be stipulated in

the form of a right of use servitude.") *See also* 3 A.N. Yiannopoulos*, Louisiana Civil Law Treatise:  Personal Servitudes*, § 8:3.

The supreme court, in *Richard v. Hall*, 03-1488 (La. 4/23/04), 874 So.2d 131, considered whether a hunting lease constituted a right of use.  Referencing Book II, Title III of the Civil Code and the attendant *Exposé des Motifs*, the court identified the three permissible dismemberments of ownership: usufruct, use and habitation.  *Id.*  It explained that such dismemberments "are real rights of enjoyment which by their nature confer direct and immediate, although limited, authority over a thing belonging to another." *Id.* at 144-45.  The supreme court distinguished such a right "from personal (obligatory) rights of enjoyment, such as those arising from leases, which confer rights against a certain debtor who has assumed the obligation to allow the enjoyment of a thing by his creditor." *Id.* at 145.[4]  Noting that the hunting lease at issue in *Richard* was merely a verbal

_____

[4] On this point of distinguishing real rights from those of personal rights, the supreme court more fully discussed the attendant scholarly works on such rights, explaining that:

The right of ownership, which according to traditional civilian analysis includes the elements of usus, fructus and abusus, may lawfully be dismembered in a variety of ways either by the intention of the owner or by operation of law.  Exposé des Motifs, Title III:  Personal Servitudes, La. Civ.Code Ann. (West 1980).  Book II, Title III, of the Louisiana Civil Code of 1870 deals specifically with three permissible dismemberments of the right of ownership:  usufruct, use and habitation.  *Id.* These dismemberments of ownership are real rights of enjoyment which by their nature confer direct and immediate, although limited, authority over a thing belonging to another person.  *Id.* They are distinguished from personal (obligatory) rights of enjoyment, such as those arising from leases, which confer rights against a certain debtor who has assumed the obligation to allow the enjoyment of a thing by his creditor.  *Id.*

Title III of Book II of the Louisiana Civil Code of 1870 was revised, amended, and reenacted by Acts 1976, No. 103, § 1, effective January 1, 1977.  The 1976 revision suppressed the personal servitude of "use" as a nominate real right and established the different category of "rights of use."   3 A.N. Yiannopoulos, *Louisiana Civil Law Treatise--Personal Servitudes*,§ 222 (4th ed.2000).  Civil Code article 639 defines the right of use as a servitude that "confers in favor of a person a specified use of an estate less than full enjoyment."   Limited personal servitudes are real rights that confer on a person limited advantages of use or enjoyment over an immovable belonging to another

agreement and not in writing, the supreme court determined that it could not be classified as a right of use. *Id.* In addition to the writing requirement of a personal servitude affecting immovable property, the supreme court observed that the agreement did not convey real rights to the lessee and was not a charge on the property in favor of the lessee.[5]

In the event that the personal servitude of right of use is created, La.Civ.Code art. 643 provides that it "is transferable unless prohibited by law or contract." Further, and determinative of the issue now under review, "[a] right of

person. Yiannopoulos, § 223. Like usufruct, they are charges on property in favor of a person rather than an estate; like predial servitudes, they are necessarily charges on an immovable belonging to another owner and are confined to certain advantages of use or enjoyment. Thus they are both "personal" and "limited." *Id.* In connection with the classification of servitudes as personal or real, the qualification of a servitude as "personal" indicates that the servitude is in favor of a person rather than an estate. *Id.*

Rights of use are real rights which confer limited advantages of use or enjoyment over an immovable. According to traditional civilian notions, a contract of lease establishes personal rights only. 2 A.N. Yiannopoulos, *Louisiana Civil Law Treatise--Property*, § 226 (4th ed.2001). Article 1709 of the Code Civil defines lease as "a contract whereby one of the parties undertakes the obligation to furnish to the other the enjoyment of a thing for a certain period of time, in consideration of a certain price which the latter promises to pay him." *Id.* The definition has been taken almost verbatim from Pothier, who did not entertain any doubts as to the personal nature of the contract of lease. *Id.* It has been stated that the contract of lease produces all the effects of personal rights and none of the effects of real rights. *Id.* Under the civil law concept, a lease does not convey any real right or title to the property leased, but only a personal right. Comment, *The Louisiana Law of Lease*, 39 Tul.L.Rev. 798 (1964). Louisiana courts have for a long time classified leases as contracts establishing personal rights and obligations. Yiannopoulos, *Property*, § 226.

The personal servitude of right of use is a real right, whereas lease is a personal right. The classification of rights as personal or real is grounded on the nature of a right. Yiannopoulos, *Property*, § 146. Both personal and real rights may be either movable or immovable, depending on their object. *Id.* When the object of a personal right is a corporeal immovable, the personal right is an incorporeal immovable. *Id.*

*Richard*, 874 So.2d at 144-45.

[5] The supreme court remarked that, instead, the lease "more closely resemble[d] a contract whereby the lessors undertook the obligation to furnish to [the lessee] the enjoyment of duck hunting on Loch Leven for a certain period of time in consideration of the $10,000 which [the lessee] promised to, and did, pay." *Richard*, 874 So.2d at 146.

use is not extinguished at the death of the natural person or at the dissolution of any other entity having the right unless the contrary is provided by law or contract." La.Civ.Code art. 644.

The trial court referenced these codal concepts in its ruling, explaining:

> [V]endors reserved any and all hunting rights, which are very broad but basically would encompass the right to hunt by knife, bow and arrow, gun, or any other "weapon", any living object considered "game" in Louisiana, and pursuant to all gaming/hunting rules and regulations. ([La.Civ.Code arts.] 2045-2057) (LA RS 56:103 et seq.)
>
> However, the deed does not transfer these rights "to heirs and assigns." This Court has grappled with application of [La.Civ.Code arts.] 1984, 642-644. It does appear that the rights retained by Kirby Roy, Jr., Marjorie Roy, and Kirby Roy, III are personal servitudes [La.Civ.Code] 533 and are subject to [La.Civ.Code arts.] 643, 644 and 1984. This is also consistent with testimony submitted at the trial by Kirby Roy, III and Honorable William J. Bennett, who acted a[s] notary at the time of the sales.
>
> Therefore, this broad right is held by Mrs. Roy (Mr. Roy, Jr. is deceased) and Kirby Roy, III, and these rights are heritable.

After review, we find no error in the trial court's determination. Instead, it is clear that the Roys, reserved any and all hunting rights on the described properties in the 1980 deeds. That reservation created a charge on the property for the benefit of a person, thereby creating a personal servitude. *See* La.Civ.Code art. 534. The reservation by the vendors did not permit full enjoyment of the estate, but it instead conferred "a specified use [hunting] of an estate less than full enjoyment" in favor of the Roys. *See* La.Civ.Code arts. 639. *See also* 641. Although the defendants suggest that the reservation of the hunting rights ceases at the death of the vendors (the Roys) since it did not reserve those rights specifically for heirs and assigns, La.Civ.Code art. 644 does not require such a designation. Article 644 instead positively anticipates that such a right "is not extinguished at the death of the natural person or at the dissolution of any other entity having the right unless the

contrary is provided by law or contract." In this case, the parties have pointed to no other law or contract that would undermine heritability by the vendor's successors.

In contrast, it is important to remember that the Roys, as the original vendors, did not reserve the hunting rights by hunting lease. That reservation was accomplished, instead, as a right of use on the respective properties. Simply, the defendants seek the return of a component of the ownership of the property that was never acquired by their ancestors in title. That component of ownership was dismembered and retained by the vendors at the time of the original 1980 transfers to the Bordelons. In this instance, the conveyances did not include a mechanism by which the rights of use would revert to the defendants. Rather, La.Civ.Code art. 644 provides that a right of use is heritable "unless the contrary is provided by law or contract." The defendants have pointed to no such law[6] applicable to the facts established at trial[7] nor to any contract that would undermine the heritability characteristic described in La.Civ.Code art. 644. Thus, the trial court appropriately designated the right of use as heritable under the facts of this case. Accordingly, this assignment lacks merit.

Finally, we note that the trial court further determined that the right of use entitles the Roys to "all" of the hunting rights. However, the defendants have not

---

[6] *See, e.g.*, La.R.S. 31:74 providing that, with regard to a mineral servitude, as was also reserved in this case: "Parties may either fix the term of a mineral servitude or shorten the applicable period of prescription of nonuse or both. If a period of prescription greater than ten years is stipulated, the period is reduced to ten years."

[7] While the defendants challenge heritability, we note that prescription of nonuse is not at issue in this appeal. *See e.g.*, La.Civ.Code art. 621, La.Civ.Code art. 645, and La.Civ.Code art. 753 (with regard to prescription of nonuse). Rather, Mr. Roy testified that he hunted both properties to the time of trial, although he did so less frequently after the difficulties between the parties arose. Mr. Roy's son also testified that he, too, consistently and regularly hunted on the property, at times as much as three times per week. He further explained that his own son, and his cousins hunted on the land as well.

11

assigned this latter finding as error. Accordingly, we leave that finding undisturbed.

*Invitees*

The defendants next challenge the trial court's ruling that the Roys' right of use included the right to have invitees upon the land for hunting purposes. The defendants suggest that, by providing such broad access to their property, certain activities associated with their ownership of the land will have to be curtailed and they "shall be deprived of partaking in opportunities as land owners."

In reasons for ruling, the trial court explained that:

> Mrs. Roy and/or Kirby Roy, III may further have or invite "invitees", at their discretion. ([La.Civ.Code art.] 2055[8]). However, their use of this broad power should be reasonable ([La.Civ.Code art.] 3[9]). They do not necessarily have to be present when there are invitees availing themselves of the hunting rights, but the number of invitees, and the length or duration of the invite should be reasonable.

In shaping its ruling, the trial court made reference to the Roys' reasonable use of the reserved hunting rights, a finding we do not disturb here. Recall that the the Roys reserved "any and all" hunting rights and, according to Mr. Roy's testimony those rights were reserved for their future, generational use and that they had invited friends to hunt on the property as well. Louisiana Civil Code Article

---

[8] Article 2055 provides:

> Equity, as intended in the preceeding articles, is based on the principles that no one is allowed to take unfair advantage of another and that no one is allowed to enrich himself unjustly at the expense of another.

> Usage, as intended in the preceding articles, is a practice regularly observed in affairs of a nature identical or similar to the object of a contract subject to interpretation.

[9] Article 3 provides:

> Custom results from practice repeated for a long time and generally accepted as having acquired the force of law. Custom may not abrogate legislation.

642, quoted above, addresses the "extent of the servitude" of a right of use and indicates that it includes the rights contemplated or necessary to its enjoyment at the time of its creation. It may also include rights that later become necessary, as long as a greater burden is not imposed on the property than is otherwise stipulated in the title. *Id.*

Additionally, and in the context of a relatively brief chapter addressing the right of use, La.Civ.Code art. 645 provides that: "A right of use is regulated by application of the rules governing usufruct and predial servitudes to the extent that their application is compatible with the rules governing a right of use servitude." Reference to La.Civ.Code art. 749, addressing predial servitudes, provides that "[i]f the title is silent as to the extent and manner of use of the servitude, the intention of the parties is to be determined in the light of its purpose." Additionally, consideration of the corresponding codal guidelines for usufruct reveals support for the trial court's determination that the Roys are entitled to the reasonable exercise of their right. *See* La.Civ.Code art. 576 (providing that a "usufructuary is answerable for losses resulting from his fraud, default, or neglect"). *See also* La.Civ.Code art. 577 (providing that "a usufructuary is responsible for ordinary maintenance and repairs for keeping the property subject to the usufruct in good order, whether the need for these repairs arises from accident or *force majeure*, the normal use of things, or his fault or neglect."). Although the defendants suggest that the Roys' exercise of the hunting rights could impede upon their opportunities as land owners, we note that such limitations must be viewed in the context of La.Civ.Code art. 651, which provides:

> The owner of the servient estate is not required to do anything. His obligation is to abstain from doing something on his estate or to permit something to be done on it. He may be required by convention

or by law to keep his estate in suitable condition for the exercise of the servitude due to the dominant estate.

In this case, the defendants purchased property via successive conveyances, each of which reserved "any and all hunting rights" to another. We find no merit in the argument that the Roys' reasonable exercise of that explicit reservation is contrary to the rights the defendants acquired as property owners.

Finally, we recognize that, in their brief, the defendants seek clarification of the trial court's ruling. They pose a series of questions, asking whether they, as property owners, will be unable to occupy the property during hunting season or whether they will have to "keep their voices down on a morning walk across their property during deer season?" They further question whether, if they are no longer able to hunt "due to fear of interfering with the rights of the plaintiffs, and as a result decide to fill in the ponds with dirt and create subdivisions or farm land," can the undefined 'hunting rights' reservation prevent property owners from exercising their right to do with their property as they so choose?" We note that all of these questions posed by the defendant address future conduct or prospective development of the property. However, "[i]t is well settled that courts should not decide abstract, hypothetical or moot controversies, or render advisory opinions with respect to such controversies." *Baxter v. Scott*, 03-2013, p. 1 (La. 11/14/03), 860 So.2d 535, 536.

Accordingly, finding the trial court's ruling regarding the scope of the Roys' rights of use supported by law, we find no merit in this assignment of error.

*False Arrest*

Next, the defendants challenge the trial court's determination that Mr. Roy was falsely arrested and its order that Mr. Gremillion, as the complainant, pay

14

damages of $6,500 in that regard. In a brief assignment, the defendants observe that Mr. Roy was never detained.

We first note that the petition instituting this matter sought "damages for malicious criminal prosecution instituted" against him, whereas the trial court awarded damages to Mr. Roy for false arrest. Under either theory, we find that the trial court's award in this regard must be reversed. A claim for wrongful arrest, i.e., false imprisonment, requires 1) the detention of the person and 2) the unlawfulness of the detention. *Kennedy v. Sheriff of Baton Rouge*, 05-1418 (La. 7/10/06), 935 So.2d 669. In this instance, the award for false imprisonment was rendered against Mr. Gremillion, a citizen who, unquestionably, did not detain Mr. Roy or prevent him from leaving the property. *See id.* This observation is notwithstanding the defendants' suggestion that Mr. Roy was never detained as he was not arrested.[10]

Neither would the award be appropriate if viewed more strictly as one for malicious prosecution. Such a claim requires proof of: 1) the commencement or continuation of an original judicial proceeding; 2) its legal causation by the present defendant against plaintiff who was defendant in the original judicial proceeding; 3) its bona fide termination in favor of the plaintiff; 4) the absence of probable cause for such proceedings; 5) the presence of malice therein; and of 6) the damages conforming to legal standards resulting to the plaintiff. *Miller v. Desoto Reg. Health Sys.*, 13-639 (La.App. 3 Cir. 12/11/13), 128 So.3d 649, *writ denied*, 14-0294 (La. 4/11/14), 138 So.3d 609. Critically, the trial court's ruling does not reflect, and the record does not support, a finding of malice on the part of Mr.

---

[10] Mr. Roy explained that he was not handcuffed, but that he voluntarily went to the Sheriff's office upon receiving the summons.

Gremillion's complaint for criminal trespass. Instead, the complaint was made in the face of a complex property dispute and only after Mr. Gremillion sought the assistance of counsel.

Accordingly, we reverse the trial court's award of $6,500 to Mr. Roy for false arrest. The defendants have not challenged the remaining award of $12,000 in lost revenue from the defendants granting hunting leases to others. We, therefore, leave the award for lost revenue undisturbed.

*New Trial*

Finally, we address the defendants' assertion that the trial court erred in denying its motion for new trial. The defendant first suggests that the trial court's ruling was contrary to law as it was in contravention of codal concepts regarding servitudes. As we above have found no merit to that argument, this argument is rendered moot.

The defendants also assert that the trial court erred in denying their motion for new trial "based on new evidence." Specifically, the defendants suggest that the trial court's ruling created the need for the introduction of additional evidence regarding property improvements that they have made to the property, as owners, and for resolution of questions regarding the parties' respective responsibilities regarding maintenance of the property. We, again, find no merit in this contention. Instead, the trial court rendered judgment on the controversy as it was presented to the court. Like this court, the trial judge was without jurisdiction to render an advisory opinion or decide abstract or hypothetical controversies. *See Baxter*, 860 So.2d 535. Accordingly, we find no error in the trial court's ruling.

The defendants' assignments of error regarding the motion for new trial lack merit.

16

**DECREE**

For the foregoing reasons, the award for false arrest rendered against the defendant-appellant, Wayne "Tookie" Gremillion and in favor of the plaintiff—appellee, Kirby Roy, III. is reversed. In all other respects, the judgment is affirmed. Costs of this proceeding are assessed against the defendants—appellants, Nelson Bordelon, Richard Tassin, and Wayne "Tookie" Gremillion.

**REVERSED IN PART AND AFFIRMED IN PART.**

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

14-976

KIRBY A. ROY, III, ET UX.

VERSUS

NELSON BORDELON, ET AL.

**PETERS, J**., **concurs in part and dissents in part.**

I basically agree with all but one issue resolved by the majority opinion. I also agree with the majority's conclusion that neither the exclusivity issue nor the $12,000.00 award was properly raised in the six assignments of error asserted on appeal by the defendants. The one issue wherein I disagree is the majority's conclusion that the $6,500.00 award to Kirby A. Roy III should be reversed. I find that it is supported by the record.

As recognized by the majority, Mr. Roy raised this complaint in the context of both a false arrest and a malicious prosecution claim. The majority correctly concluded that Mr. Roy did not establish the elements of a false arrest claim as those are set forth in *Kennedy v. Sheriff of Baton Rouge*, 05-1418 (La. 7/10/06), 935 So.2d 669, but I disagree with the majority's conclusion that Mr. Roy did not establish the malice element required for a malicious prosecution award as set forth in *Miller v. Desoto Regional Health System*, 13-639 (La.App. 3 Cir 12/11/13), 128 So.3d 649, *writ denied*, 14-294 (La. 4/11/14), 138 So.3d 609.

Mr. Gremillion filed a criminal charge against Mr. Roy and, as pointed out in *Simon v. Variety Wholesalers, Inc.*, 00-452, p. 6 (La.App. 1 Cir. 5/11/01), 788 So.2d 544, 548-49, *writ denied*, 01-2371 (La. 11/16/01), 802 So.2d 617, "[a]

statement that imputes the commission of a crime to another is defamatory per se and as a result, falsity and malice are presumed, but not eliminated as requirements. Defendant then bears the burden of rebutting the presumption." The court in *Simon* went on to say that:

> Privilege is a defense to a defamation action. A qualified privilege exists whenever a defamatory communication is made: (1) in good faith, (2) on a matter in which the person making the communication has an interest or with regard to which he has a duty, or (3) to a person with a corresponding interest or duty. Good faith exists for the purpose of this privilege when the communicating party has reasonable grounds to believe the statement to be true.

*Id.* at 549. (Citations omitted).

In this case, Mr. Gremillion had no reasonable ground to believe that the criminal charge he instituted against Mr. Roy was true. He was well aware of the hunting reservation language in the 1980 transaction and used the criminal law to put pressure on Mr. Roy. The record supports a finding of malicious prosecution, and I would affirm the award of damages to Mr. Roy.

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

14-976

KIRBY A. ROY, III, ET UX.

VERSUS

NELSON BORDELON, ET AL.

**GREMILLION, Judge, concurs in part and dissents in part.**

I concur in the majority's reversal of the award of damages to Kirby Roy, III.

In all other respects, I dissent.

> Testimonial or other evidence may not be admitted to negate or vary the contents of an authentic act or an act under private signature. Nevertheless, in the interest of justice, that evidence may be admitted to prove such circumstances as a vice of consent or to prove that the written act was modified by a subsequent and valid oral agreement.

La.Civ.Code art. 1848.  Thus:

> [W]hen the terms of a written contract are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, parole evidence is admissible to clarify the ambiguity and to show the intention of the parties.

*McCarroll v. McCarroll*, 96-2700, p. 12 (La. 10/21/97), 701 So. 2d 1280, 1286.

"Whether or not the terms of a contract are ambiguous is a question of law, and appellate review of questions of law is simply to determine whether the trial court's interpretive decision is legally correct."  *Brafa v. Crist*, 05-270, p. 5 (La.App. 3 Cir. 11/2/05), 915 So.2d 957, 961.

"Hunting rights" is of necessity a personal servitude under La.Civ.Code art. 534 and 639, et seq.  Personal servitudes constitute a charge upon the thing for the benefit of a person.  La.Civ.Code art. 534.  The deed between Kirby Roy, Jr. and

Marjorie Roy and the Bordelons created a right in favor of the Roys to hunt on the eight tracts conveyed. In no way did the right it created inure to the benefit of another estate. The subsequent deeds perpetuated this reservation. This right was not created in favor of the Roys' estate, but in favor of them personally. It created a personal servitude.

Louisiana law only recognizes three personal servitudes: usufruct, habitation, and right of use. La.Civ.Code art. 534. A right of use is defined as a personal servitude that confers in favor of a person a specified use of an estate less than full enjoyment." La.Civ.Code art. 639. A right of use is transferable, and does not terminate on the death of the person on whom it was conferred unless the contract or law provides that it does. La.Civ.Code arts. 643 and 644. Rights of use are governed by the rules applicable to usufruct and predial servitudes to the extent those rules are compatible with the rules governing rights of use. La.Civ.Code art. 645.

> Another cardinal rule of interpretation is that a doubt "as to the existence, extent, or manner of exercise of a predial servitude shall be resolved in favor of the servient estate." This rule incorporates into Louisiana law the civilian principle that **ownership is presumed to be free of burdens and that any doubt as to a burden must be resolved *in favorem libertatis.*** The Louisiana Supreme Court has repeatedly declared that "servitudes are restraints on the free disposal and use of property, and are not, on that account, entitled to be viewed with favor by the law." It follows that "servitudes claimed under titles, are never sustained by implication—the title creating them must be express, as to their nature and extent, as well as to the estate which owes them, and the estate to which they are due."

3 Louisiana Civil Law Treatise, Personal Servitudes §8:6 (5th ed.)(emphasis added).

The Roys maintain that the evidence adduced was not intended to negate or vary the contents of the conveyance, but to illustrate the act's intent. Mrs. Roy

testified that the intent was exactly to provide a place for her husband, his children, and grandchildren to hunt. Kirby Roy, III, confirmed this; indeed, during cross-examination, when he eschewed the use of the word "exclusive" to characterize the Roys' right to hunt on the property. The Roys' testimonies establish that the right was personal and limited. The Roys knew that Appellants were leasing the land for hunting and voiced no objection, because they understood the hunting rights were limited to the descendants of Kirby Roy, Jr. and Marjorie Roy. And because we are required to interpret such divisions of ownership in favor of the servient estate, I find that this right is not exclusive to the Roys and does not even extend to invitees. It, further, does not prohibit the Appellants from leasing hunting rights to others, subject to the Roys' rights to hunt. Accordingly, I would reverse the trial court's award of $12,000.00 to Marjorie Roy and against the Appellants. I would also reverse that portion of the judgment allowing the Roys' invitees to hunt on the property. I would maintain the injunction in favor of the Roys only to the extent that it prevents interference with their right to hunt on the property.

The trial court also awarded Kirby Roy, III, $6,500.00 against Appellant Wayne Gremillion for false arrest. False arrest is synonymous with "false imprisonment." *Parker v. Town of Woodworth*, 11-1275 (La.App. 3 Cir. 3/7/12), 86 So.3d 141. The tort requires proof of two elements: a person's detention and the unlawfulness of the detention. *Id*. Because of a dispute with Mr. Gremillion, Mr. Roy was served with a criminal summons. He presented the agreement recognizing the Roys' hunting rights to the sheriff's office, and the district attorney dismissed any charges before Mr. Roy was even scheduled to appear before a grand jury. Mr. Roy was never detained. He failed to carry his burden of proof. I therefore concur in reversing this award.

3